**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ramon Geliga NATEL, Defendant-Appellant.**

No. 86–2611
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 5, 1987.

Rehearing Denied April 1, 1987.

P. Joseph Brake, Asst. Federal Public Defender, San Antonio, Tex., for defendant-appellant.

Helen M. Eversberg, U.S. Atty., San Antonio, Tex., Paul G. Cassell, Atty., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before CLARK, Chief Judge, GARWOOD and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Ramon Geliga Natel appeals complaining that his conviction for drug trafficking is not supported by the evidence and that the trial court erred in not giving the jury the "mere presence" instruction he had proffered. After reviewing the record we are unpersuaded by Natel's arguments and accordingly affirm.

## I.

In February 1986 Detective Douglas Bays of the San Antonio Police Department was conducting an on-going narcotic distribution investigation. On four other occasions Robert Hernandez Macias had sold Bays quantities of heroin. Macias had been the only party to meet with Bays at the previous transactions. While Macias' source of heroin was unknown, Bays had been informed by a confidential informant that Natel was involved in the transactions.

On February 17 Bays called Macias to set up another drug purchase. Bays explained that he had $17,000 and that he wished to purchase some heroin. Macias agreed to sell Bays 15 ounces of heroin the next day. On February 18 Bays contacted Macias and told him that if he wished to consummate a deal that they should meet in a K-Mart parking lot. Macias agreed to be there in thirty minutes.

About forty-five minutes later Macias and Natel arrived at the parking lot. Macias was driving his pickup truck and Natel was riding in the cab as a passenger. Macias circled the parking lot and then pulled up next to Bays' automobile. Both vehicles were facing the same direction approximately one to two feet apart. Bays, who was accompanied by Officer Doug Cortinovis of the San Antonio Police Department, sat on the passenger side of his automobile thereby placing him across from Macias.

Bays handed a bag of money to Macias, and Macias handed Bays a package containing a substance which later tested positive as heroin. Macias placed the bag on the seat between himself and Natel and then turned back toward Bays. Bays and Macias then discussed the fact that Bays was a little short on the money and Bays asked Macias to "front" him the deficit. Either Macias or Natel said "Yeah-okay." Macias then asked Natel, "Is it all right?" and Natel nodded his head in an affirmative answer. Macias then quickly left the parking lot.

Over a body wire Cortinovis instructed surveillance units to arrest Macias and Natel. As the officers approached, Macias sought to evade capture by jumping curbs and swerving through traffic. During the chase Natel was observed looking back and bending down out of sight. The pickup truck was eventually stopped and Macias and Natel were arrested. A search of the vehicle recovered the money and revealed a loaded pistol on the floor of the cab.

Natel, along with his co-defendant Macias, was indicted on two counts of narcotic law violations. Natel was charged in count 1 with conspiracy to possess heroin with intent to distribute in violation of 21 U.S.C. § 846. He was also charged in count 4 with aiding and abetting the substantive offense of intentional distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

At trial the government presented evidence establishing the previously recited factual summary. Officers Bays and Cortinovis also testified that when Macias pulled into the parking lot it appeared that Macias and Natel were scanning the area for police. The officers also testified that after the exchange between Bays and Macias they heard Natel counting the money. They reasoned it was Natel counting the money because Macias' hands were always within their view after the exchange. The government also offered a contemporaneous recording of the transaction in which Cortinovis told the surveillance units that the passenger Natel "has the money [because] he was counting it."

Both defendants also testified at trial. Macias testified that Natel knew nothing about the drug transaction. Natel testified that he had merely asked Macias for a ride to the south side of San Antonio on February 18. He also testified that he heard none of the conversation between Bays and Macias and that he did not count any money. Natel stated that he did not see any money until it "just flew out of the bag" during the chase and that he never saw the loaded pistol on the floorboard.

In its charge the trial court instructed the jury that an accused's mere presence at or association with criminal activities is insufficient alone to support a conviction for conspiracy or possession. Natel's counsel had requested a separate instruction restating Natel's mere presence defense, but the court refused to give the defendant's requested instruction since it felt the charge already informed the jury of this matter. The jury returned a verdict of guilty on both counts against Natel. Natel filed a timely notice of appeal.

## II.

In his appeal Natel raises two points of error: (1) the evidence is insufficient to support his conviction on either count of the indictment, and (2) the trial court erred and prejudiced his defense by not giving the jury the "mere presence" instruction proffered by Natel's counsel. We address each point in turn.

## A.

On appeal the standard of review for the sufficiency of the evidence in a criminal case is whether a "reasonable trier of fact could [have found] that the evidence establishe[d] guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). In evaluating the sufficiency of the evidence under this standard, we view the evidence and all reasonable inferences drawn from it in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Barnes,* 761 F.2d 1026, 1031 (5th Cir.1985).

Natel was indicted in the first count of the indictment with conspiracy to possess heroin with intent to distribute. In a conspiracy prosecution under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt both the existence of an agreement between two or more persons to violate the narcotic laws, and that each conspirator knew of, intended to join, and participated in the conspiracy. *United States v. Michelena-Orovio,* 719 F.2d 738, 742 (5th Cir.1983) (en banc), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1605, 80 L.Ed.2d 135 (1984). The essence of a conspiracy under section 846 is an agreement to violate the narcotics laws. *United States v. Prieto-Tejas,* 779 F.2d 1098, 1103 (5th Cir. 1986). The agreement between the co-conspirators and the defendant need not be shown by direct evidence but may be inferred from circumstantial evidence, such as concert of action. *United States v. Tolliver,* 780 F.2d 1177, 1182 (5th Cir.1986). The government does not have to show an overt act in furtherance of the conspiracy. *E.g., Prieto-Tejas,* 779 F.2d at 1103. A conspiracy conviction will not be reversed merely because a defendant did not know each detail of the conspiracy, became a member after its inception, or played only a minor role in the overall scheme. *United States v. Vegara,* 687 F.2d 57, 60 (5th Cir. 1982). While presence at the scene of the

crime or close association with another involved in a conspiracy alone will not support an inference of participation in a conspiracy, *see Vegara,* 687 F.2d at 61, presence or association is a factor that a jury may rely upon, along with other evidence, in finding conspiratorial activity by the defendant. *See United States v. Trevino,* 560 F.2d 194, 197 (5th Cir.1977).

■ Viewing the evidence and reasonable inferences in the light most favorable to the government, we find the evidence sufficient to support Natel's conspiracy conviction. Natel argues that the evidence only establishes that "he was present at the wrong place at the wrong time" and relies upon *Tolliver, supra,* 780 F.2d 1177, as authority requiring reversal. We however do not believe *Tolliver* is controlling.

In *Tolliver* we reversed the conspiracy convictions of two defendants because the "circumstantial evidence did no more than place Scott and Onick at the motel, where they briefly associated with the other defendants." *Id.* at 1182. The defendants Scott and Onick had stopped by a motel room of a co-defendant who was under investigation for drug trafficking. Neither went inside the room where the drugs were located. Furthermore, they only momentarily talked with the suspected drug seller and then left the scene. Finally, there was no other evidence that Scott and Onick had any involvement in the suspected drug trafficking scheme.

In contrast to the *Tolliver* defendants, the government produced evidence establishing more than Natel's mere presence at the scene. The jury might have reasonably determined that Natel was involved in the conspiracy based upon his presence at the scene of the transaction and his participation in the exchange. Both Bays and Cortinovis testified that they believed, based upon their observations at the time, that Natel counted the money for Macias and indicated that all was well. It is certainly a reasonable inference that Natel could have only told Macias the money was all right if he knew how much Bays was supposed to pay for the heroin. From the evidence the jury could have reasonably inferred Natel knew of and had joined the venture to sell Bays the heroin Macias had delivered. The testimony of both the undercover and surveilling police that Macias and Natel were "scouting" the parking lot upon arrival also supports the finding that Natel was aware and part of the upcoming drug exchange.

Even though Natel presented a different description of the events of February 18, it was within the jury's province to choose between the conflicting testimony. Based upon our review of the record and guided by the applicable standard of review, we cannot say the jury's adoption of the government's position was unreasonable. Accordingly, we affirm Natel's conviction under count 1 for conspiracy to possess heroin with intent to distribute.

■ In count four of the indictment Natel was charged with aiding and abetting in the intentional distribution of heroin. The charge of aiding and abetting possession of heroin with intent to distribute requires proof of (1) aiding and abetting the possession and (2) aiding and abetting the distribution of the heroin. *United States v. Aquirre Aquirre,* 716 F.2d 293, 295 (5th Cir.1983). "To aid and abet, the defendant must wilfully associate himself in some way with the criminal venture and wilfully participate in it as he would in something he wished to bring about." *Tolliver,* 780 F.2d at 1184. As with conspiracy, a person's mere presence and association alone is insufficient to sustain an aiding and abetting conviction but presence is a factor along with others to be considered. *United States v. Acosta,* 763 F.2d 671, 682 (5th Cir.), *cert. denied sub nom. Weempe v. United States,* — U.S. —, 106 S.Ct. 179, 88 L.Ed.2d 148 (1985).

■ Natel's challenge to his aiding and abetting conviction is also premised upon his claim that he was merely present at the scene of a drug transaction. The fact that Macias possessed and did distribute the heroin was well-established at trial. The issue then is whether there is sufficient evidence to support a finding that Natel

aligned himself with this venture and aided in its completion. Based upon the same evidence that supports Natel's conspiracy conviction, we find that a jury could have reasonably decided Natel aided and abetted Macias' heroin transaction. Accordingly, we affirm his conviction under count 4.

## B.

Natel's second point of error is that the district court erred in refusing to submit to the jury his proposed mere presence instruction. His proferred instruction read as follows:

> Defendant Ramon Geliga Natel has offered evidence that he had no knowledge of any heroin transaction or of any conspiracy to violate the narcotics laws, but that he was merely present at the time and place where others were involved in such unlawful activity. You are instructed that proof that a defendant was merely associated with a criminal or that a defendant was merely present at the scene of a crime is not, without more, sufficient to convict that person of aiding and abetting a criminal venture or of participating in a conspiracy.

Unless you find beyond a reasonable doubt that Ramon Geliga Natel was more than merely associated with criminals or more than merely present on February 18, 1986 at the K-Mart Parking Lot on Goliad Road, then you must return a verdict of Not Guilty as to Mr. Natel on the two counts of the indictment in which he is charged.

While refusing to instruct the jury as Natel requested, the court did charge the jury at several points that mere presence or association with criminal activities alone could not support a conviction on a substantive or conspiracy count.[1]

■ A trial judge is afforded broad discretion in formulating jury instructions, and the refusal to adopt a defendant's proposed instruction warrants reversal only where the charge, considered as a whole, does not accurately reflect the issues, law, and defenses of the case. *See United States v. McCallum*, 788 F.2d 1042, 1046 (5th Cir.1986); *United States v. Fowler*, 735 F.2d 823, 829 (5th Cir.1984); *United States v. Harrelson*, 705 F.2d 733, 736–37 (5th Cir.1983).

■ Natel concedes in his brief that the district court "did not deprive him of his

---

1. The court's charge read in pertinent part:

What the evidence in the case *must* show beyond a reasonable doubt is:
1) That two or more persons in some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment; and,
2) That the defendant willfully became a member of such conspiracy.

In determining whether a conspiracy existed, the jury should consider the actions and declarations of all of the alleged participants. However, in determining whether a particular defendant was a member of the conspiracy, if any, the jury should consider only his acts and statements. He cannot be bound by the acts or declarations of other participants until it is established that a conspiracy existed, and that he was one of its members....

Of course, mere presence at the scene of an alleged transaction or event, or mere similarity of conduct among various persons and the fact that they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some object or purpose of a conspiracy, does not thereby become a conspirator.

....

Notice, however, that before any defendant may be held criminally responsible for the acts of others it is necessary that the accused willfully associate himself in some way with the criminal venture, and willfully participate in it as he would in something he wishes to bring about; that is to say, that he willfully seeks by some act or omission of his to make the criminal venture succeed.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator. ... Also, the case of each defendant should be considered separately and individually. The fact that you may find one or more of the accused guilty or not guilty of any of the offenses charged should not control your verdict as to any other offense or any other defendant.

defensive theory" and did not misstate the law. Rather, he complains that the district court did not present the issue in the charge in the same language as he requested. Natel however does not enjoy the right to have instructions given in the exact language he requests. *United States v. Bright,* 630 F.2d 804, 807 (5th Cir.1980).[2]

█ The district court informed the jury of Natel's mere presence defense in clear and concise language. Natel's counsel was able to present evidence on the issue and was given full opportunity in his arguments to explain Natel's position to the jury. Such a full treatment before the jury of Natel's defensive stance certainly ensured that his due process rights to a fair trial were recognized and protected. *United States v. Fooladi,* 746 F.2d 1027, 1030 (5th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985).

After reviewing the charge given in this case, Natel's proposed instruction, and the trial record, we can find no error on the part of the district court. We therefore reject Natel's second point of error.

### III.

For the reasons stated above, we affirm Natel's conviction under count 1 for conspiracy to possess heroin with intent to distribute and under count 4 for aiding and abetting the intentional distribution of heroin.

AFFIRMED.

---

**2.** Natel relies heavily on *United States v. Goss,* 650 F.2d 1336 (5th Cir.1981), drawing from it the proposition that recitation of a defense theory "in the negative" is reversible error. This reads far too much into *Goss,* which involved a charge of intent to defraud under a mail fraud statute. The district court in *Goss* refused the defendant's request for an instruction that his good faith belief in the truth of his assertions would operate as a complete defense, concluding that this was covered by a portion of the instructions dealing with specific intent. The Court of Appeals reversed:

> Charging the jury that a finding of specific intent to defraud is required for conviction, while it may generally constitute the negative instruction, *i.e.,* that, if the defendants acted

in good faith, they could not have had the specific intent to defraud required for conviction, does not direct the jury's attention to the defense of good faith with sufficient specificity to avoid reversible error.

650 F.2d at 1345. *Goss* does not stand for the broad proposition that recasting a defendant's instruction "in the negative" is reversible error. Indeed, any such reading would be contrary to the clearly-established rule that the trial judge has broad discretion in tailoring the instructions. *Harrelson,* 705 F.2d at 736 through 737. Instead, *Goss* holds that in some circumstances a general specific intent instruction does not adequately inform the jury of a good faith defense.