UNITED STATES of America,
Defendant-Appellant,

v.

Paul LENTZ, Plaintiff-Appellee.

No. 86–3723.

United States Court of Appeals,
Fifth Circuit.

July 29, 1987.

Virginia Laughlin Schlueter, Deputy Federal Public Defender, John T. Mulvehill (court appointed), New Orleans, La., for defendant-appellant.

Eddie J. Jordan, Asst. U.S. Atty., John P. Volz, U.S. Atty., Peter G. Strasser, Asst. U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before WISDOM, HIGGINBOTHAM and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In a two count indictment, the government charged Paul R. Lentz with: (1) conspiring with persons unknown to possess cocaine with intent to distribute it in violation of 21 U.S.C. § 846; and (2) possession of cocaine with intent to distribute it in violation of 21 U.S.C. § 841(a)(1). The jury found Lentz guilty of the conspiracy count but acquitted him on the possession count. Lentz appeals his conspiracy conviction. We affirm.

## I.

In this appeal, Lentz raises a single issue: whether the evidence at trial was sufficient to support his conspiracy conviction.

To obtain a conspiracy conviction under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt both the existence of an agreement between two or more persons to violate the narcotics laws, and that the accused knew of, intended to join, and participated in the conspiracy. *United States v. Natel*, 812 F.2d 937,

940 (5th Cir.1987). The government, of course, need not establish these elements by direct evidence. The agreement, a defendant's guilty knowledge and a defendant's participation in the conspiracy all may be inferred from the "'development and collocation of circumstances.'" *United States v. Vergara*, 687 F.2d 57, 61 (5th Cir.1982) (citations omitted). *See also Natel*, 812 F.2d at 940. With these principles in mind, we examine the evidence and the inferences that can be drawn from it in a light most favorable to the jury verdict to determine whether a reasonable jury must necessarily have entertained a reasonable doubt as to Lentz' guilt. *United States v. Galvan*, 693 F.2d 417, 419 (5th Cir.1982).

## II.

Lentz conducts a musical booking business in the name of Paramount Agency located at 2221 Treasure Street, New Orleans, Louisiana 70122. Paramount Agency has no employees other than Lentz. Lentz, who lives alone, also resides at this address.

In March 1983, Lentz traveled to Cartagena, Colombia, to play with the Heritage Hall Jazz Band at the Caribbean Music Festival. He returned again to Cartagena in January 1984 as a consultant to the 1984 Caribbean festival. In January 1984, Lentz met in Cartagena on several occasions with Antonio Escobar Duque, a local attorney, who was a coordinator of the music festival. Lentz has not returned to Colombia since January of 1984.

During the ten month period between July 1985 and April 1986, Mirta Peebles, a Customs Service mail technician in Miami, Florida, intercepted six manila envelopes containing various quantities of cocaine. Each of these envelopes were addressed to:

PARAMOUNT AGENCY
2221 TREASURE STREET
NEW ORLEANS, LA 70124
U.S.A.

These envelopes were postmarked from Cartagena, Colombia, which is generally regarded as a major source of cocaine; agents of the Drug Enforcement Adminis-

tration (DEA) refer to Cartagena as the cocaine capital of the world. The address labels on these envelopes were identical and apparently had been typed on the same typewriter. Each envelope contained another smaller envelope, which in turn contained a greeting card. The cocaine in each instance was taped inside the greeting card.

The dates of each interception and the amount of cocaine found in each envelope are as follows: (1) on July 15, 1985, one envelope was intercepted containing forty grams of cocaine; (2) on November 4, 1985, one envelope was intercepted containing thirty grams of cocaine; (3) on January 6, 1986, two envelopes were intercepted, each of which contained 25 grams of cocaine; and (4) on April 4, 1986, two envelopes were intercepted each containing forty-five grams of cocaine.

Ms. Peebles reported the July, November and January interceptions to the DEA Task Force but the DEA declined to deliver the envelopes. The envelopes and their contents were later destroyed in accordance with the Customs Service's standard procedure. When the DEA was notified of the April 4, 1986 interception, they agreed to deliver the envelopes to the addressee.

On April 15, 1986, DEA agent Jessar, posing as a mailman, delivered the envelopes to 2221 Treasure Street in New Orleans. Lentz answered the door when Jessar knocked. Jessar asked Lentz whether this was the Paramount Agency address and Lentz responded affirmatively. Jessar then held the envelopes so that both the address label and postmark were in Lentz' view and informed him that each envelope had $.22 postage due. Lentz did not express surprise upon receipt of the envelopes but went into his residence and obtained the $.44. Lentz gave the money to Jessar and signed a receipt for the delivery. Jessar then handed the envelopes to Lentz and as Lentz turned to enter his residence, Jessar arrested him. Upon questioning, Lentz denied any knowledge of the contents of the envelopes delivered to him or knowledge of the earlier ship-

ments of cocaine to the Paramount Agency address.

The two envelopes delivered to Lentz contained 90 grams (3.17 ounces) of cocaine that was 98% pure. Uncut cocaine of this purity is not suitable for personal use; cocaine intended for personal use is ordinarily cut so that its cocaine content is reduced to no more than 20%. This amount of 98% pure cocaine has a wholesale value of approximately $1,500. After cutting, however, a dealer could expect to retail this quantity of cocaine for $4,800 to $7,200.

In a search of Lentz' residence, DEA agents discovered two triple beam balance scales in a back utility room. When the plate on one end of these scales that holds the object to be weighed is balanced against weights on the three calibrated beams, the weight of the item or substance on the plate can be determined. DEA agent Woodfork testified that scales such as these are commonly used by cocaine dealers to weigh the pure cocaine, the cutting material and the final mixture when it is repackaged for retail sale.

The larger of these scales is calibrated in customary units: the front beam is calibrated in ⅛th ounce increments up to a total weight of one ounce; the middle beam is calibrated in one ounce weights up to a total of sixteen ounces; and the back beam is calibrated in tenths of ounces up to a total weight of one ounce. Lentz testified that he used this larger scale to weigh his lighter pieces of business mail so that he could apply the correct amount of postage.

The smaller scale is calibrated in metric units: the front beam is calibrated in decigrams (10ths of a gram) up to a total weight of ten grams; the middle beam is also calibrated in decigrams up to a total weight of a hundred grams. The back beam has a 100 gram weight which gives the scale the capability to weigh a total of 200 grams. DEA agent Woodfork testified that cocaine is ordinarily sold on the street in gram units. Lentz testified that he traded an antique pharmaceutical scale he had been given by his father for the smaller scale at a flea market. Although this scale

was in good working condition, Lentz denied using it.

Lentz' telephone records establish that several telephone calls were placed from Lentz' two telephone numbers to a number in Cartagena, Colombia listed as Duque's residence during the time period in which the envelopes described above were intercepted. Most of these telephone calls ranged from two to four minutes in duration and were placed at approximately the same time of day: between the hours of 6:00 and 7:30 p.m. In June 1985, the month before the first interception, three calls were made to Duque's residence; these were made on June 1, 1985, June 15, 1985, and June 22, 1985. On July 2, 1985, approximately two weeks before the first envelope was intercepted, three more calls were made to Duque's residence from Lentz' telephone. After the third shipment of cocaine was intercepted on January 6, 1986, two calls were placed: one on January 12, 1986, a week after the interception and one at the end of that month, on January 30, 1986. Finally, a call was placed from Lentz' numbers to Duque's number on April 3, 1986, one day before the final two packages were intercepted and two weeks before DEA Agents delivered those envelopes to Lentz.

Lentz conceded that he placed these telephone calls but denied that he ever discussed drugs with Duque. He testified that all of these calls to his friend Duque were for the purpose of discussing music or other purely personal subjects.

### III.

The question for decision narrows to whether the jury was entitled to conclude from the circumstantial evidence presented that Lentz, between July 1985 and April 1986, conspired with at least one other person to possess cocaine with the intent to distribute it. The only argument Lentz makes on appeal is that the jury was not entitled to find that he was a knowing, willing recipient of cocaine during the critical period.

The resolution of the issue presented in this appeal depends on the inferences the jury could reasonably make from the evidence. *Natel*, 812 F.2d at 941.

Cocaine is valuable and the jury was entitled to infer that a sender, when placing it in the mails would address the envelope carefully and direct it to its intended recipient. The envelopes delivered on April 15, 1986 were the fifth and sixth envelopes addressed to the Paramount Agency. All six envelopes bore not only the correct address but the correct name of Lentz' company, Paramount. The jury was entitled to conclude that chances were slight that the sender erred in addressing the envelopes.

Lentz' contact with Cartegena, Colombia, where the cocaine originated, reduced further the odds that the envelopes were erroneously directed to Lentz. The evidence established that Lentz made brief telephone calls to Cartegena either shortly before or after the dates three of the four shipments were intercepted.

Lentz' reaction to Agent Jessar on April 15, 1986, when the two envelopes were delivered, was consistent with the government's theory that Lentz was expecting the delivery. Lentz showed no surprise when the envelopes were delivered. He asked agent Jessar no questions about the delivery and did not hesitate to pay the postage due so he could obtain the packages.

The jury was also entitled to find Lentz' possession of the two sensitive triple beam scales commonly used by drug dealers to weigh small gram quantities of cocaine inconsistent with his protestations of innocence.

We are thus persuaded that the circumstantial evidence was ample to permit the jury to conclude that Lentz was a knowing, willing recipient of the cocaine and that an accessory in Colombia mailed the cocaine to him.

Lentz argues that *United States v. Pruett*, 551 F.2d 1365 (5th Cir.1977), compels us to conclude that the above evidence does not demonstrate his knowing participation in a conspiracy. In *Pruett*, a single

package containing cocaine was addressed to the defendant's wife and mailed to a post office box. The wife picked up the package at the post office and returned to a residence where *both* she and the defendant lived. The defendant's wife, not the defendant, partially opened the package before they were both arrested. No evidence was presented that the defendant was ever in possession of the package. The defendant had been heard on a wiretap discussing the purchase of one ounce of cocaine, but this conversation took place three and a half months before the shipment in question and the shipment in question contained three ounces of cocaine, not one. Because the evidence did not demonstrate that the cocaine was intended for the defendant and the wiretap conversation was both remote in time from the shipment and concerned a different amount of cocaine, we concluded that the evidence was insufficient to support the defendant's conspiracy conviction. *Id.* at 1389.

*Pruett* is factually distinguishable for several reasons. First, unlike *Pruett*, in which the cocaine was addressed to the defendant's wife, the shipments of cocaine in this case were undoubtedly intended for Lentz because he lives and works alone at the Paramount Agency address. Second, Lentz personally accepted the April shipments. Third, the conversations with Lentz' Colombian contact coincided in time with three of the four shipments of cocaine. Finally, no drug related paraphernalia was found in Pruett's residence, whereas Lentz possessed the type of scales commonly used by cocaine dealers.

Lentz also relies on *United States v. Sheikh,* 654 F.2d 1057 (5th Cir.), *cert. denied,* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982), to support his argument that the evidence is insufficient to support his conviction. In *Sheikh,* the defendant, who was living in Texas, traveled to Iran. Less than one month after his return to the United States, a Koran in a display case was shipped to him from Iran. Heroin was concealed in hidden compartments in the display case. The *Sheikh* court found the evidence insufficient to establish that *Sheikh* conspired with another

person because of the possibility that the person who shipped the display case may have been ignorant of the heroin hidden in the secret compartments. *Id.* at 1063. *Sheikh* is distinguishable because the cocaine was not concealed in the envelopes sent to Lentz; thus, there is no possibility that the shipper was ignorant of its presence.

Because the evidence is sufficient to support the verdict, Lentz' conviction is affirmed.

AFFIRMED.