**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Frederick Cody MAGEE, John Olin Buchanan, George Walter Hanson, Jr., and Robert Frank Norris, Defendants-Appellants.**

No. 86–1404.

United States Court of Appeals, Fifth Circuit.

June 26, 1987.

Rehearing Denied Aug. 4, 1987.

Andrew Cotzin, Joel Hirschhorn, Miami, Fla., for Magee.

Larry Zinn, San Antonio, Tex., Jeff T. Deason, Nacogdoches, Tex., for Buchanan.

Harry L. Zimmerman, Robert T. Baskett, Dallas, Tex., for Hanson & Norris.

Sidney Glazer, Atty., Dept. of Justice, Washington, D.C., Marvin Collins, U.S. Atty., Denver Gray McCarty, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before RANDALL, GARWOOD and W. EUGENE DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Frederick Cody Magee, George Walter Hanson, Jr., Robert Frank Norris, and John Olin Buchanan appeal their convictions for conspiracy to import marijuana in violation of 21 U.S.C. § 963; conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846; and two counts of importation of marijuana from the Republic of Belize in violation of 21 U.S.C. § 952(a). Magee also appeals his conviction for one count of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). We affirm.

## I.

The government sought to establish at trial that Magee headed a large scale marijuana importation conspiracy. The govern-

ment contended that Hanson, Norris and Buchanan provided financial backing for the venture. Several accessories, Brown, Kornell, Rayburn, and Weston, entered guilty pleas and cooperated with the government. Their role in the scheme will be discussed below. The conspiracy had three phases: (1) From the fall of 1983 to early 1985, Magee and other co-conspirators imported several airplane loads of marijuana from Mexico to the Aero Valley Airport in Roanoke, Texas. Because of a disagreement with his Mexican source in early 1985, Magee ended the Mexican importation and began to plan the importation of marijuana from Belize. (2) In the spring of 1985, Magee met with the appellants and other co-conspirators on several occasions to plan the Belizian operation. During May of 1985, two large loads of marijuana were successfully imported from Belize. However, on the third smuggling trip, the pilot, Kornell, was arrested by Belizian authorities ending the Belizian smuggling phase of this conspiracy. (3) In June of 1985, after Kornell had been released on bail and fled to the United States, Magee sent his attorney, Mary Bowman, to Belize to ascertain what information Kornell had revealed to Belizian authorities. On her flight to Belize, she met Carlos Senor, a Drug Enforcement Administration (DEA) undercover informant. From this contact, the DEA was able to arrange a reverse sting operation in which they sold Magee 2,000 pounds of marijuana in July of 1985.

We will relate the facts in more detail in our discussion below of the points raised on appeal.

## II.

The appellants raise numerous issues in this appeal. We first address the issues raised by appellants Hanson and Norris.

## A.

■ Hanson and Norris first contend that co-conspirator hearsay statements were erroneously admitted against them because the evidence independent of those statements was insufficient to establish that they were members of the conspiracy.

See *United States v. James,* 590 F.2d 575, 581 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). They argue that, stripped of reliance on co-conspirator hearsay, the evidence against them shows only their knowledge of the illicit operations and their association with the other conspirators. Hanson and Norris argue that this evidence was insufficient to establish their participation in the conspiracy.

The government established the following facts, independent of co-conspirator hearsay statements: In March 1985, appellants Hanson, Norris and Buchanan attended a meeting at the AmFac Hotel in Dallas with Magee, Brown, Kornell and Rolando Longoria, a representative of a Belizian marijuana source. The subject discussed at this meeting was importation of marijuana from Belize. A few days later, Magee and Brown met again with Hanson and Norris at a cafeteria on Central Expressway in Dallas. At this meeting, Brown, in a false statement to Hanson and Norris, assured them that the airplane necessary for smuggling drugs from Belize would be ready when needed. Shortly after that meeting, Magee gave Kornell $22,000 to purchase a Cessna 402 airplane in Houston. In mid-April, Magee, Brown and Kornell flew in the new airplane to the Addison Airport in Dallas to meet with the other appellants and Smiley Urbena, another Belizian contact. On May 12, 1985, Kornell and Urbena made the first trip to Belize and returned to the Aero Valley Airport with 1000 pounds of marijuana. After this trip, Kornell met with Magee, Hanson and Buchanan and reported on the trip's success as well as the bright prospects for future smuggling trips to Belize. On May 29, 1985, after a second successful smuggling trip, Kornell again flew to Belize to purchase marijuana. However, upon his arrival, he was arrested by Belizian authorities. After his release on bail, Kornell met Norris at the residence of Urbena's uncle in Belize. Norris informed Kornell that he was there to help him get back to the United States through Mexico. Kornell was smuggled from Belize to Mexico by

boat. Norris met Kornell in Mexico, gave him Norris' visa and purchased clothes for him. Kornell, posing as Norris, then travelled back to the United States. After Kornell arrived in Dallas, he met with Magee, Hanson and Buchanan at the Double Tree Inn in Dallas. All present at this meeting expressed their excitement about his return and well being.

Hanson, relying on *United States v. Stanley,* 765 F.2d 1224 (5th Cir.1985), argues that his presence at the meetings recited above was insufficient to establish that he was a member of the conspiracy. In *Stanley,* the independent evidence against defendant Leake showed only that he was in a hotel room with two co-conspirators in a drug operation when DEA agents returned to the hotel to make arrests. Leake's participation in the conspiracy was not discovered by the undercover DEA agents until his arrest. Because mere association with conspirators is not enough to establish participation, we concluded that the district court erred in determining that Leake was a member of the conspiracy and admitting his co-defendant's out-of-court declarations against him. *Id.* at 1243.

The independent evidence against Hanson is much more substantial than the evidence against Leake in *Stanley.* Unlike Leake, who attended one meeting, the evidence disclosed Hanson's presence at *all* key junctures of the Belizian operation: (1) at the March 1985 meeting with the other appellants and a representative of the Belizian supplier before the operation began; (2) at a meeting a few days later, before the airplane to be used was purchased in which Brown falsely represented to Hanson and Norris that the airplane was available when needed; (3) at a meeting with Urbena, another Belizian contact, after the airplane was obtained but before the first trip to Belize; (4) at a gathering of most of the participants after the first successful run from Belize; and (5) finally, after Kornell had successfully returned from Belize following his arrest.

We are persuaded that this evidence is sufficient to support the district court's finding by a preponderance of the evidence that Hanson was a participant in this drug smuggling conspiracy. Hanson was present not at a single meeting between the co-conspirators but at several meetings called to plan large shipments of marijuana from Belize to the United States. In light of Hanson's presence at every important meeting to set up the smuggling operation, the district court was entitled to conclude that his appearances were not coincidental and that he was a participant who sought to contribute to the goal of smuggling marijuana into the country. *See United States v. Paone,* 758 F.2d 774, 776 (1st Cir.1985).

■ The government's evidence connecting Norris to the conspiracy is more substantial. Norris attended practically the same meetings as Hanson. In addition, as described above, Norris travelled to Belize and helped Kornell flee from that country to the United States.[1]

We conclude therefore that the district court did not err in finding that Hanson and Norris were members of the conspiracy. Accordingly, we reject Hanson and Norris' contention that the hearsay statements of their co-conspirators were erroneously admitted.

### B.

Hanson and Norris next contest the sufficiency of the evidence supporting their convictions on both the conspiracy and substantive counts.

■ In a drug conspiracy prosecution, the government must prove beyond a rea-

---

1. Norris argues that Kornell's arrest in Belize in May of 1985 terminated the conspiracy and that his trip to Belize after Kornell's arrest cannot be relied upon as evidence of his participation in the conspiracy. We disagree. The evidence supports the government's theory that the conspiracy continued at least through the July 1985 reverse sting operation. Although Norris argues that there is no evidence of his participation in this phase of the conspiracy, the record does not establish that Norris withdrew from the conspiracy after he joined it in March of 1985. Thus, the record supports the implicit finding of the district court that Norris' trip to Belize in June 1985 occurred while the conspiracy continued and he was a member of this conspiracy.

sonable doubt the existence of an agreement between two or more persons to violate the narcotics laws, and that each conspirator knew of, intended to join and participated in the conspiracy. *United States v. Natel*, 812 F.2d 937, 940 (5th Cir.1987). An agreement between the other conspirators and the defendant need not be proved by direct evidence, but may be inferred from concert of action. *United States v. Vergara*, 687 F.2d 57, 61 (5th Cir.1982). Although mere presence at the scene of the crime or close association with co-conspirators will not alone support an inference of participation in a conspiracy, presence or association is one factor that the jury may rely on, along with other evidence, in finding conspiratorial activity by a defendant. *Natel*, 812 F.2d at 940–41.

■ With these principles in mind, we now examine *all* the evidence against Hanson and Norris viewed in a light most favorable to the jury verdict in order to determine whether a reasonable minded jury must necessarily have entertained a reasonable doubt of Hanson or Norris' guilt. *United States v. Galvan*, 693 F.2d 417, 419 (5th Cir.1982).

As discussed, the government established that Hanson and Norris attended all key meetings concerning the Belizian phase of the conspiracy. However, because the record does not attribute particular statements to Hanson or Norris from which the jury could infer their membership in the conspiracy, our task is to determine whether the circumstantial evidence is sufficient to support the jury's conclusion that they participated in the conspiracy.

The jury was entitled to conclude that, except for Buchanan, Hanson and Norris, the role of all those present at the March 1985 meeting was defined. When Magee stated to Brown that he did not have sufficient funds to undertake the operation and intended to obtain front money from those present at the meeting, the jury was entitled to infer that Magee was referring to Buchanan, Hanson and Norris. At the next meeting, Brown, at Magee's request, reassured Hanson and Norris about the availability of the necessary airplane. The

jury was entitled to infer that the necessary funds were raised at the second meeting because shortly after the meeting Magee gave Kornell money to purchase the airplane and the operation proceeded. During the months that followed, Hanson and Norris continued to appear at meetings: (1) Hanson and Norris attended a meeting where they met with Urbena, a Belizian drug connection, and observed the new airplane; (2) Hanson met with Kornell after the first Belizian drug run and received a report on the success of the trip; and (3) Hanson met with Kornell after his arrest. Thus, it was entirely reasonable for the jury to infer from Hanson and Norris' continual appearance that they had invested in the venture's success. Evidence of Norris' trip to Belize to help Kornell flee that country and return to the United States directly implicates him in the drug operation and provides additional support for the verdict against him.

While each piece of evidence, standing alone, may have been insufficient to permit the jury to infer participation in the smuggling scheme, we are persuaded that the jury could reasonably have concluded that this evidence, when examined in the aggregate, sufficed to establish that Hanson and Norris participated in the conspiracy. *See United States v. Vergara*, 687 F.2d 57, 81 (5th Cir.1982).

Hanson and Norris also challenge their convictions for aiding and abetting the importation of marijuana from Belize. The same evidence that supports their conspiracy convictions also supports the jury's finding that Hanson and Norris aided and abetted the importation of marijuana from Belize on the two occasions charged in the indictment. *See United States v. Natel*, 812 F.2d 937, 941–42 (5th Cir.1987).

### C.

■ Hanson and Norris contend that the evidence established only one conspiracy with the dual objectives of importation and possession of marijuana rather than separate conspiracies to import *and* possess the drug. They argue that only one conspiracy offense was established at trial and one of

their conspiracy counts must be reversed. See *Braverman v. United States,* 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942).

The identical argument was explicitly rejected in *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); we likewise reject appellants' contention.

### D.

■ Hanson and Norris next argue that the district court erred when it declined to submit the following charge: "Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy. I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient [to find that a defendant was a member of the conspiracy]."

A trial judge is vested with broad discretion in formulating his jury instructions and the refusal to adopt a defendant's proposed instruction warrants reversal only where the charge, considered as a whole, "does not accurately reflect the issues, law and defenses of the case." *United States v. Natel,* 812 F.2d 937, 942 (5th Cir.1987). The instruction given here, read as a whole, accurately reflects the law.[2] *United States v. Heffington,* 682 F.2d 1075, 1084 (5th Cir.1982), *cert. denied sub nom, Giella v. United States,* 459 U.S. 1108, 103 S.Ct. 734, 74 L.Ed.2d 957 (1983). Thus, we find no error in the conspiracy instructions.

### E.

■ Hanson and Norris also join appellant Magee's contention that the district court erroneously declined to ask the jury particular questions on voir dire. The court was asked to inquire about the attitudes of prospective jurors toward the use of marijuana and whether any personal experience they had encountered with narcotics would prevent them from rendering a fair and impartial verdict.

Rule 24(a) of the Federal Rules of Criminal Procedure gives the district court broad discretion in determining the appropriate scope and method of jury voir dire. This discretion extends to the decision whether to propound questions proffered by counsel and this decision will not be lightly overturned. *United States v. Hawkins,* 658 F.2d 279, 283 (5th Cir.1981).

The record of the jury voir dire reveals that the court questioned individual jurors about their experience with narcotics and their attitude toward drugs; the court excused two prospective jurors for cause because of their inability to put aside their personal feelings concerning drug use. The district court also reminded the jury that all the counts of the indictment pertained to marijuana and asked them whether such charges would prevent them from being fair and impartial. These questions adequately covered the subject matter of Magee's proposed inquiry and we find no abuse of discretion in declining to ask the specific questions Magee submitted.

### F.

Hanson and Norris finally join Magee's contention that the district court should

---

**2.** The jury in this case was instructed in pertinent part as follows:

[I]f you conclude that the conspiracy charged in the Indictment did exist, you should next determine whether or not the Defendant under consideration willfully became a member of this conspiracy.... A person may become a member of a conspiracy without full knowledge of all details of the unlawful scheme or the identities of all the other members. And, if a Defendant knowingly and willfully joins in an unlawful scheme, that is sufficient to convict him of the conspiracy, even though he was not a member when it began and even though his role may have been a minor one.

However, mere presence at the scene of an alleged transaction, or the mere fact that alleged members may have associated with each other or engaged in similar conduct, does not necessarily establish the existence of a conspiracy. Nor is mere presence at the scene of an alleged crime sufficient to establish that the Defendant knowingly participated in it. And, a person who has no knowledge of a conspiracy, and who merely happens to act in some way which furthers the conspiracy, does not become a member of it.

have granted a mistrial when the prosecutor told the jury in his opening statement that two of the co-conspirators had pled guilty and been convicted.

■ A witness-accomplice's guilty plea may be disclosed at trial, provided the evidence serves a legitimate purpose and the jury is given a clear, cautionary instruction that it may consider the accomplice's guilty plea only to assess his credibility as a witness and not to create an inference of guilt against the accused. *United States v. Borchardt*, 698 F.2d 697, 701 (5th Cir.1983).

■ These requirements were met in the instant case. The government was entitled to outline for the jury its expected evidence which included testimony by convicted co-conspirators; thus, the disclosure served a legitimate purpose. The district court also gave a complete cautionary instruction as required. Also, all defense counsel vigorously cross-examined the cooperating co-defendants about their guilty pleas; thus, most of the emphasis on the guilty pleas is attributable to defense counsel's cross-examination and not the government's opening statement. The district court did not err in denying the motion for mistrial.

Because we find no grounds to disturb Hanson and Norris' convictions, we turn to appellant Magee's remaining contentions.

### III.

#### A.

■ Magee first contends that a properly instructed jury should have found several distinct conspiracies rather than a single conspiracy. He argues that the district court erred in failing to give his requested multiple conspiracy instruction.

The only question before us is whether the court's charge, considered as a whole, accurately reflects "the issues, law and defenses of the case." *Natel*, 812 F.2d at 942. Magee concedes that he was not entitled to the exact language requested. *Id.* He argues, however, that the district court's "watered down" charge was insufficient to adequately inform the jury of his theory of defense.

The district court instructed the jury that:

> The conspiracy is an agreement by two or more persons to do something illegal. You should first determine whether or not the evidence established the existence of the single, overall conspiracy alleged in the indictment. Proof of several different conspiracies does not establish the single, overall conspiracy, unless one of the conspiracies is the conspiracy charged in the indictment. If you find that the alleged conspiracy did not exist, then you must acquit the defendants of [the conspiracy charges].

This charge made clear that proof of several different conspiracies did not establish the single, overall conspiracy charged in the indictment and that the jury must find that the single conspiracy charged did exist before they could convict Magee. Thus, the instruction correctly and adequately informed the jury of Magee's theory of defense. Accordingly, the district court did not abuse its discretion by refusing to give Magee's requested instruction.

#### B.

■ Magee next argues that the following question to Brown on cross-examination by Norris' counsel improperly revealed Magee's bad character and therefore required a mistrial:

> Q. ... Would he ever—would you know Cody to say things that you found later just weren't true?

The district court sustained Magee's objection to the question and directed the jury to disregard it.

Federal Rule of Criminal Procedure 52(a) provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." The district court did not err by refusing to grant a mistrial. The question was improper, but it did not affect substantial rights. Our review of the record persuades us that this single question in the course of a lengthy trial was not significantly prejudicial to Magee. Furthermore, there is no

reason to believe that the jury failed to follow the judge's curative instructions to ignore the question. *See United States v. Bazan,* 807 F.2d 1200, 1205 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987).

#### C.

■■■ Magee also contends that the following italicized portions of the government's closing argument required a mistrial.

You know, Mr. Hirschhorn [Magee's counsel] did a masterful job of getting in about everything we lawyers are allowed to argue, the evidence, a reasonable deduction from the evidence, the Bible, literature, and things like Libya that everybody has alluded to, I guess means, common knowledge. See, we can argue everything or things that everybody knows. *And I think everybody knows and it's common knowledge that we got a drug problem in this United States. We got a problem.*

Mr. Hirschhorn: Objection, Judge.

The Court: Sustained.

Mr. McCarty: *There is no such thing as a victimless crime, there are victims to marijuana smuggling.* And I think—

Mr. Hirschhorn: Your Honor, I object.

The Court: Overruled. Go ahead.

\* \* \* \* \* \*

... How many times have you heard something, read something, say you know, *when are they going to do something about this drug smuggling? When are they going to do something? When is right here and now. You are they. And the way is right through the door of that jury room and have your foreman sign a guilty verdict. That's the way to do something about the drugs.*

Mr. Hirschhorn: Your honor, I object. You sustained my prior objection.

The Court: I sustain this objection. You are instructed to disregard that. You need to argue based on this case.

Mr. McCarty: Based on the evidence in this case, I told you what I think it's worth, about what time frame I think is worth. But in the final analysis, Mr. Lunt and I, *we work for you. You tell us what it's worth because your verdict says a lot about you individually, and a lot about you collectively, and a lot about the value you place individually on crime. We will be waiting to see just what the value is.*

Prosecutorial appeals for the jury to act as "the conscience of the community" are not impermissible unless they are calculated to inflame. *United States v. Bascaro,* 742 F.2d 1335, 1354 (11th Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 613 (1985). Most of the italicized remarks are similar to the argument considered in *Bascaro* and amount to a suggestion by the prosecutor that the jury fulfill its role as the conscience of the community. The district court did not abuse its discretion in denying the motion for a mistrial.

#### D.

■■■ Appellant Magee finally argues that evidence of his marijuana smuggling from Mexico derived from statements he made during plea negotiations was improperly admitted against him in violation of Federal Rule of Criminal Procedure 11(e)(6),[3] Federal Rule of Evidence 410 and the government's promise that any new information he provided would not be used against him. He contends that the government improperly used the information he provided to confront his co-conspirators, persuade them to enter guilty pleas, testify

---

**3.** Rule 11(e)(6) and Rule 410 are virtually identical. Rule 11(e)(6) provides:

> Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions: ...

> (D) Any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

Fed.R.Crim.P., 11(e)(6).

against him and thereby establish the Mexican smuggling phase of the conspiracy.

Magee does not contend that any of the statements he made during plea negotiations were admitted at trial; Magee contests the admission of evidence which, he argues, was derived from his statements. But, Rule 11(e)(6) and Rule 410 declare inadmissible only *statements* made during the course of plea discussions. On their face, these rules do not preclude the admission of evidence derived from such statements. We find it unnecessary, however, to decide whether these rules bar evidence derived from such statements because the district court did not err in concluding that the evidence Magee finds objectionable was not derived from Magee's statements.

The district court held a post-trial hearing to determine whether the evidence of the Mexican smuggling operation introduced at trial was derived from Magee's pretrial statements. Lunt, the DEA case agent, and Magee testified at this hearing. Lunt testified that Magee told him generally that he had smuggled marijuana from Mexico before the Belizian operation. But, Lunt testified that the specific information that was revealed at trial concerning the Mexican operation came from Weston, Kornell and Rayburn. Lunt stated that he did not make it known to either Weston, Kornell or Rayburn that he had talked to Magee, nor did he confront them with information that Magee had disclosed.

The district court was entitled to credit Lunt's testimony. Thus, his finding that any evidence introduced at trial concerning importation from Mexico came from sources independent of Magee's statements during plea negotiations is not clearly erroneous. We therefore find no error in the admission of evidence concerning marijuana importation from Mexico.

We find no basis to disturb Magee's conviction, and now turn to the issues raised by appellant Buchanan.

## IV.

### A.

■ Buchanan first contends that the district court erred in denying his motion to sever his trial from the trial of his co-defendants, particularly Magee. The denial of a severance motion will be reversed only for an abuse of discretion upon a showing of specific and compelling prejudice. *United States v. Erwin*, 793 F.2d 656, 666 (5th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 589, 93 L.Ed.2d 590 (1986).

Buchanan argues first that his joint trial with Magee prevented him from demonstrating the hostility and bias of the testifying co-defendants who were implicated by Magee during Magee's plea bargaining with the government. As stated above, the parties were precluded from revealing to the jury any statements Magee made to the government during Magee's attempt to plea bargain. We fail to see, however, how the potential bias of these witnesses toward Magee affected the weight of their testimony against Buchanan. Also, the testifying co-conspirators were extensively cross-examined by all defense counsel about their guilty pleas to lesser charges carrying lighter penalties; the record demonstrates that these witnesses' credibility was vigorously tested. We are therefore persuaded that this single, insubstantial limitation on Buchanan's cross-examination does not establish the compelling prejudice required for severance.

Buchanan also argues that he was prejudiced by the "spillover" effect of the overwhelming evidence of Magee's guilt. Additional evidence of guilt adduced against a co-defendant in a joint trial does not alone constitute compelling prejudice. *United States v. Williams*, 809 F.2d 1072, 1085 (5th Cir.1987).

A review of the record persuades us that Buchanan was not unduly prejudiced by his joint trial with Magee. The jury was instructed to consider the evidence against each defendant separately and the record reveals significant evidence that Buchanan was an active participant in the conspiracy. On one occasion he was, unaccompanied by Magee, brought to the hangar at Aero Valley where he observed the weighing and packaging of marijuana from Mexico.

Also, after the second trip to Belize, Buchanan paid Kornell and Brown for their pilot services. The district court did not abuse its discretion by denying his motion for severance.

**B.**

Appellant Buchanan next contends that the district court erred by allowing Rayburn to testify over objection that Magee told Rayburn that Buchanan was "the primary buyer of [Magee's] marijuana." [4] Buchanan argues that the record does not support the district court's finding that the statement was made during the course and in furtherance of the conspiracy and thus was not admissible as a co-conspirator hearsay statement under Federal Rule of Evidence 801(d)(2)(E).[5] See *United States v. James,* 590 F.2d 575, 581 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

We first find no merit to Buchanan's contention that the district court erred in finding that Magee's statement was made during the course of the conspiracy. The record clearly demonstrates that Magee made this statement to Rayburn after he and Rayburn had travelled to Mexico in the fall of 1983 to arrange the importation of marijuana and Rayburn had agreed to allow Magee to use his telephone system both to receive and place long distance calls for Magee.

We next consider Buchanan's contention that Magee's statement to Rayburn was not in furtherance of the conspiracy. The phrase "in furtherance of the conspiracy" must not be applied too strictly or the purpose of the co-conspirator exception will be defeated. *United States v. James,* 510 F.2d 546, 549 (5th Cir.), *cert. denied,* 423 U.S. 835, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975). Ordinarily, a statement that identifies the role of one co-conspirator to another is in furtherance of the conspiracy. *United States v. Handy,* 668 F.2d 407, 408 (8th Cir.1982); *United States v. Patton,* 594 F.2d 444, 447 (5th Cir.1979). Rayburn screened many of Magee's calls and had a need to know the identity and role of Magee's co-conspirators. Accordingly, the record supports the district court's finding that this statement was made in furtherance of the conspiracy.[6]

**C.**

Buchanan finally contends that admission of Magee's hearsay statement to Rayburn violated his sixth amendment right to confront the witnesses against him. But, Buchanan did not raise this issue at trial and it is not preserved for our review on

---

4. Rayburn testified as follows:
   Q. Sir, have you ever talked to an individual who identified himself as Buck?
   A. I was on a three-way conversation when Cody talked to him.
   Q. Had Cody told you anything about a person named Buck?
   A. Yes, sir.
   MR. PAPE:
   Objection, Your Honor, this is hearsay. And, if it relates to John Buchanan it has not been established that John Buchanan is a member of any conspiracy.
   THE COURT:
   Want to respond?
   MR. McCARTY:
   Judge, our response is that we are going to connect that up later.
   THE COURT:
   I'm going to overrule the objection. You've made your point and the witness obviously is going to be subject to cross-examination on that point. Go ahead.

   * * * * * *

   Q. Had Cody told you anything about Buck?
   A. Yes, sir.
   Q. What did he tell you?
   A. He was the primary buyer of his marijuana.

5. Rule 801 provides:
   Statements which are not hearsay. A statement is not hearsay if ... (2) Admission by a Party Opponent. The statement is offered against a party and is ... (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.
   Fed.R.Evid. 801(d)(2)(E).

6. Buchanan did not specifically object on the ground that the government failed to establish that the statement was made in furtherance of the conspiracy. Had he done so, the government may well have produced more explicit evidence to make this showing.

appeal.[7] *United States v. Gibbs*, 739 F.2d 838, 847–50 (3d Cir.1984) (en banc), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985). *See also United States v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980).

## CONCLUSION

We find no error; accordingly, the judgment of the district court is

AFFIRMED.

Lowell T. Cage, Javier A. Rey, McLain, Cage, Hill & Niehaus, Houston, Tex., for defendants-appellants.

Walter E. Workman, Andrew C. Schirrmeister, III, Houston, Tex., for interested parties.

Lenard M. Parkins, Kyung S. Lee, Sheinfeld, Maley & Kay, Houston, Tex., for plaintiff-appellee.

---

7. Appellants Hanson and Norris also join in this contention. They also did not raise this issue at trial and thus did not preserve it for appeal.

