UNITED STATES of America,
Plaintiff–Appellee,

v.

Steve Tristan VASQUEZ, Alfredo Paul Guajardo, and Daniel Gomez, Jr.,
Defendants–Appellants.

No. 90–2088.

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1992.

David R. Bires, Houston, Tex., for Vasquez.

Douglas C. McNabb, Houston, Tex. (court-appointed), for Guajardo.

Jose Gonzalez–Falla, Asst. Federal Public Defender, Roland E. Dahlin, II, Federal Public Defender, Houston, Tex., for Gomez.

Nina Goodman, Crim. Div., Appellate Sec., U.S. Dept. of Justice, Washington, D.C., Paula C. Offenhauser, Kathlyn G. Snyder, Asst. U.S. Attys., Houston, Tex., for U.S.

Before WILLIAMS, DUHÉ and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendants Steve Tristan Vasquez ("Vasquez"), Alfredo Paul Guajardo ("Guajardo") and Daniel Gomez, Jr. ("Gomez")— found guilty (1) of conspiring to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846, and (2) of aiding and abetting the possession of more than 100 kilograms of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2—appeal their convictions.[1] Finding no error, we affirm.

## I

On July 18, 1989, Guajardo contacted Roland Graz ("Graz"), a confidential informant for the Drug Enforcement Administration ("DEA"), to find a buyer for some marijuana. Graz contacted DEA agent Gerald Douglas ("Douglas") and told him of this conversation. That afternoon, Douglas and another undercover DEA agent, Barbara McCollough, met with Guajardo and an associate to discuss a possible transaction.[2]

Guajardo telephoned Graz the following day, and told him that he had found a source with a large quantity of marijuana to sell. Graz and Guajardo agreed to meet so that the purchasers could view a sample of the marijuana. The next day, Guajardo met with Graz and Douglas in the parking lot of a Houston convenience store. Guajardo gave Douglas a one-pound sample of marijuana to examine, and offered to sell him 300 pounds of marijuana for $660 a pound.

Graz called Guajardo later and agreed to the deal. Graz then drove to a second convenience store where he met Guajardo, while Douglas waited nearby in an undercover van with the money to buy the marijuana.[3] Roberto Sanchez Nava ("Nava")[4] and Vasquez subsequently arrived to discuss the deal. Graz got into Nava and Vasquez's car, and was to accompany them to a nearby house where the marijuana was

---

1. Vasquez was sentenced to 125 months imprisonment on each count of the two-count indictment and eight years of supervised release as to each of Counts 1 and 2. Guajardo and Gomez were each sentenced to concurrent terms of 63 months imprisonment on Counts 1 and 2, and five years of supervised release to run concurrently as to Counts 1 and 2. Each defendant was also assessed a special assessment of $100.00.

2. The DEA agents were posing as potential buyers from Florida. The DEA agents showed Guajardo's associate $140,000 in cash and indicated that they were interested in purchasing 300 pounds of marijuana.

3. Graz was wearing a listening device that was monitored by DEA agent Michael Spassaro who was parked near this second stop.

4. Robert Sanchez Nava was indicted with the defendants. He failed to appear for trial and was declared a fugitive.

stored. Nava, however, stopped at two different phone booths before driving to the house. Gomez was waiting at the second phone booth where he and Vasquez spoke. Vasquez returned, and drove the car to a house on Auburn Street (the "Auburn Street house").[5]

Gomez had already arrived at the house and he let Nava, Vasquez and Graz in. Vasquez and Gomez went to a back room, and each returned carrying a bundle of marijuana. Gomez also showed Graz the rest of the marijuana in the back room. Graz then said he wanted to complete the transaction, so he agreed to contact DEA agent Douglas and ask him to bring the money.

Nava drove Graz back to the second convenience store.[6] Along the way, Nava stopped at a pay phone so that Graz could call DEA agent Douglas and tell him to return to the convenience store with the money.[7] Guajardo had waited for the purchasers' return at the convenience store. When Graz and Nava arrived at the convenience store, Graz walked over to Douglas's car and gave a prearranged arrest signal; Nava had walked over to Guajardo's car where they both were arrested.

Graz, accompanied by DEA agents, returned to the Auburn Street house. Graz was greeted by Vasquez and Gomez. Graz handed the money to Gomez. The agents then got out of the van, identified themselves, and entered the house through the back door without an arrest warrant.[8] The agents arrested Gomez inside the house and Vasquez on the front lawn.

Vasquez, Guajardo and Gomez were subsequently indicted and convicted of conspiracy to distribute, and of aiding and abetting the possession of more than 100 kilograms of marijuana with intent to distribute. They timely appeal, alleging that exi-

gent circumstances did not justify a warrantless entry into Gomez's residence and that the evidence seized should have been suppressed. In addition, Vasquez raises three separate points of appeal, claiming that: (i) the evidence is insufficient to support his conviction under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846; (ii) the evidence is insufficient to support his conviction under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2; and (iii) the district court erred in admitting statements made by Vasquez's co-conspirators under Fed.R.Evid. 801(d)(2)(E). We review each contention.

## II

The defendants moved to suppress evidence seized from the house, alleging that the agents' warrantless entry into the Auburn Street house violated their Fourth Amendment rights. The district court denied the motion, stating that exigent circumstances excused the agents' failure to obtain a warrant. Defendants assert error in this holding by the district court.

A warrantless entry into a home to effectuate a search or seizure presumptively unreasonable. *See Payton v. New York*, 445 U.S. 573, 586–87, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980) (citation omitted). However, the presence of exigent circumstances may justify a warrantless entry into a home for the purposes of arrest or search. *See Minnesota v. Olson*, 495 U.S. 91, 100–01, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85 (1990). A district court's determination as to whether exigent circumstances existed is fact-specific, and will not be reversed unless clearly erroneous. *See United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991) (citations omitted); *see also United*

---

5. The small house is located at 3221 Auburn Street in Houston, Texas.

6. Vasquez and Gomez remained at the Auburn Street house.

7. Instead, Graz actually called DEA agent Michael Spassaro—apparently to alert Spassaro to the events that were occurring.

8. As the DEA agents entered the house they saw bundles of marijuana stacked near the back door, and they found more bundles of marijuana while they were securing the house. Twenty-five bundles of marijuana weighing a total of 375 pounds were seized from the Auburn Street house.

*States v. Webster,* 750 F.2d 307, 326 (5th Cir.1984), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2340–41, 85 L.Ed.2d 855 (1985) (applying clearly erroneous standard to district court's determination that exigent circumstances existed); *United States v. Muniz–Melchor,* 894 F.2d 1430, 1433–34 (5th Cir.), *cert. denied,* 495 U.S. 923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990) (when a district court's ruling on a motion to suppress is based on live testimony, trial court's purely factual findings must be accepted unless clearly erroneous, or influenced by an incorrect view of the law; evidence is viewed in light most favorable to the party prevailing below; and questions of law are reviewed de novo) (citation omitted).

▮ To determine if exigent circumstances exist, some factors a court examines include: (1) the degree of urgency involved and amount of time necessary to obtain a warrant; (2) a reasonable belief that contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of contraband while a search warrant is sought; (4) information indicating the contraband's possessors know police are on their trail; and (5) the ready destructibility of the contraband. *See United States v. Thompson,* 700 F.2d 944, 948 (5th Cir.), *affirmed on appeal after remand,* 720 F.2d 385 (5th Cir.1983) (listing facts that may be relevant to finding of existence of exigent circumstances) (citation omitted); *see also United States v. Capote–Capote,* 946 F.2d 1100, 1103 (5th Cir.1991) (listing frequently cited examples of exigent circumstances that may justify warrantless entry) (citation omitted).

The district court found that exigent circumstances existed, in part because the Auburn Street house was not under surveillance by the DEA and so the DEA agents did not know where the deal was taking place until they arrived at the house. The district court also found the DEA agents had a legitimate concern to secure the location because of the imminent danger to Graz. Gomez, Vasquez, and Guajardo each argue that the warrantless entry violated the Fourth Amendment. They argue that no exigent circumstances

existed. They argue that warrantless searches, subject to only a few exceptions, are per se unreasonable under the Fourth Amendment. *See Thompson,* 700 F.2d at 946. Moreover, they contend that the Government has failed in its burden of demonstrating exigency. *See United States v. Shima,* 545 F.2d 1026, 1028 (5th Cir.), *on reh'g,* 560 F.2d 1287 (5th Cir.), *cert. denied,* 434 U.S. 996, 98 S.Ct. 632, 54 L.Ed.2d 490 (1977) (citation omitted) (burden on Government to show that exception existed). Defendants disagree that the Government's contentions—fear that the marijuana would be destroyed and concern for the informant's safety—establish exigent circumstances.

▮ We agree with the Government's argument that it would not have been feasible to obtain a warrant before entering the house to arrest Vasquez and Gomez because the agents did not have the Auburn Street house under surveillance. We also agree with the district court's finding that exigent circumstances existed because of this fact. In addition, the agents acted reasonably for a second, and perhaps more important reason—although Nava and Guajardo had left with Graz to get the money to buy the marijuana, Nava and Guajardo could not return with Graz to the Auburn Street house because they had been arrested. Thus, the DEA agents' concern that Vasquez and Gomez might suspect Graz of treachery, threaten his safety, and then flee the house with the marijuana before the agents could obtain a warrant was reasonable. As we have noted, even after the arrest of Nava and Guajardo, the agents did not know the address of the Auburn Street house; Graz had to accompany the DEA agents there. Given this particular situation, there was an urgent need for the DEA agents to take action. *See MacDonald,* 916 F.2d at 769 ("[t]he essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an 'urgent need' to render aid or take action") (citations omitted).[9]

---

9. Defendants cite *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984),

Gomez, Vasquez and Guajardo also assert, without great force, that the DEA agents created exigent circumstances to subvert the Fourth Amendment's warrant requirements. *See Webster,* 750 F.2d at 327 (discussing manufacturing of exigency); *Thompson,* 700 F.2d at 950 (discussing the creation of exigent circumstances). They alleged that the DEA agents created such circumstances by choosing to put the informant (Graz) back inside the house and then claiming that the DEA agents entered the house to protect the informant. Defendants also claim that no preparations were made by the DEA agents to obtain a search warrant if the agents discovered that the marijuana was located in a residence, and that Graz should have been instructed by the DEA agents to obtain the address of the house where the marijuana was stored. *See Thompson,* 700 F.2d at 949–51 (discussing creation of exigent circumstances); *Webster,* 750 F.2d at 327–28 (discussing manufactured exigency). We find these arguments to be without merit. Given the circumstances that required the immediate search of the Auburn Street house (the possibility that Gomez and Vasquez might flee, the possible danger to Graz, and the possibility that the marijuana might have been destroyed or removed), the district court's determination that the DEA agents could not have obtained a warrant prior to the search is not clearly erroneous. Considering the abbreviated time frame within which the agents were operating and the fact that Graz was to return to the house without Nava, the DEA agents had no other viable option but to enter the Auburn Street house. The warrantless entry was thus justified by exigent circumstances.

### III

Vasquez argues that his conviction for conspiracy to distribute marijuana and his conviction for aiding and abetting the pos-

session of marijuana with intent to distribute was not supported by substantial evidence. We disagree.

■ In reviewing a challenge to the sufficiency of the evidence in a criminal case, it is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *See United States v. Hall,* 845 F.2d 1281, 1283 (5th Cir.), *cert. denied,* 488 U.S. 860, 109 S.Ct. 155, 102 L.Ed.2d 126 (1988), *quoting United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). This court reviews the evidence in the light most favorable to the Government, and we make all reasonable inferences and credibility choices in favor of the verdict. *See United States v. Evans,* 941 F.2d 267, 271–72 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 451, 116 L.Ed.2d 468 (1991) (citation omitted).

### A

■ Vasquez contests his conviction of conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846. For Vasquez to be convicted under section 846 of Title 21, the Government must prove beyond a reasonable doubt that: (1) a conspiracy existed, (2) that Vasquez knew of it, and that, with this knowledge, (3) Vasquez voluntarily became a part of the conspiracy. *See United States v. Bland,* 653 F.2d 989, 996 (5th Cir.), *cert. denied,* 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981) (citations omitted); *see also United States v. Stowell,* 947 F.2d 1251, 1254–55 (5th Cir.1991).

■ Vasquez contests the second and third elements of this test. Vasquez ar-

---

for the general proposition that a warrant should have been obtained before the DEA agents entered. Although, the legal principles enunciated in *Segura* apply to the case at hand, its facts are inapposite. In *Segura,* the agents had been conducting an ongoing surveillance of the apartment containing the drugs and there did not appear to be a chance that the perpetra-

tors would flee. Defendants also cite *United States v. Alvarez,* 810 F.2d 879 (9th Cir.1987), to argue that, pursuant to Fed.R.Crim.P. 41(c)(2), the DEA agents should have attempted to obtain a telephonic search warrant. Here, however, immediate action was necessary, and defendants have failed to show otherwise.

•

gues that there is no evidence that he knew of a scheme to distribute marijuana or that he voluntarily became a part of such a scheme. Vasquez cites *United States v. Gomez*, 776 F.2d 542, 549 (5th Cir.1985) for the proposition that he may not be convicted merely upon a showing that he stepped into a climate of activity " 'reek[ing] of something foul.' " The Government points to *United States v. Kaufman*, 858 F.2d 994, 999 (5th Cir.1988) (citation omitted), to argue that a defendant's knowledge of and participation in a conspiracy may be inferred from the circumstances. More specifically, the Government argues that the circumstances in this case indicate that Vasquez knew of and participated in the conspiracy.

Viewing the evidence in the light most favorable to the Government, we find that Vasquez knew of and voluntarily participated in the conspiracy. Vasquez arrived at the convenience store with Nava after Guajardo told Graz that other men would join them to work out the marijuana transaction's details. In addition, Vasquez accompanied Nava and Graz to the Auburn Street house. When they stopped along the way to meet Gomez, Vasquez got out of the car and spoke with him. Arriving at the house, Vasquez went into the back room and returned displaying a bundle of marijuana. When Graz indicated that he was ready to complete the marijuana sale, Vasquez answered "okay." Such a collocation of circumstances can indicate that Vasquez knew of the conspiracy and voluntarily participated in the conspiracy. *See United States v. Gallo*, 927 F.2d 815, 820 (5th Cir.1991) (citations omitted). Vasquez's arguments to the contrary are implausible. His presence at the meeting at the convenience store, his presence in the Auburn Street house, and the fact that he knew the location of the marijuana in the house were surely not happenstance. Ac-

cordingly, we hold that a reasonable trier of fact could find that the evidence establishes beyond a reasonable doubt that Vasquez knew of the conspiracy and voluntarily became part of it. *See United States v. Morgan*, 835 F.2d 79, 82 (5th Cir.1987) (citation omitted) (the evidence "must show beyond a reasonable doubt that two or more persons came to a mutual understanding to try to violate the narcotics laws.").

**B**

■ Vasquez argues that numerous statements of co-defendants Guajardo, Nava, and Gomez were incorrectly allowed into evidence as statements of co-conspirators pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence.[10] We review evidentiary rulings for abuse of discretion. *See United States v. Triplett*, 922 F.2d 1174, 1180–81 (5th Cir.), — U.S. —, 111 S.Ct. 2245, 114 L.Ed.2d 486 (1991) (citation omitted). Vasquez cites *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), and argues that the statements must have been made in the course of a conspiracy if they are to be admitted and that these statements were not. Vasquez contends that there was not enough evidence to show that a conspiracy existed between Guajardo, Nava, Gomez and himself.

■ The Government argues, as noted in the discussion regarding the conspiracy, that the evidence was sufficient to establish Vasquez's involvement in the conspiracy with Guajardo, Nava and Gomez and that the district court properly admitted the statements as co-conspirators' statements. For a co-conspirator's statement to be admitted pursuant to Rule 801(d)(2)(E), there must be a conspiracy, the statement must be made in the course of the conspiracy, and the declarant and the defendant must be members of the conspiracy. *See United States v. Miliet*, 804 F.2d 853, 856

---

**10.** Rule 801(d) provides:

(d) Statements which are not hearsay. A statement is not hearsay if—

\* \* \* \* \* \*

(2) Admission by party-opponent. The statement is offered against a party and is ... (E) a statement by a co[-]conspirator of a party

during the course and in furtherance of the conspiracy.

Specifically, Vasquez contests a July 18, 1989 call Guajardo made to Graz, statements Guajardo made concerning people from Montrose, and statements Nava and Gomez made regarding the drug transaction.

(5th Cir.1986) (citation omitted). All three of these elements must be established by a preponderance of the evidence. *See Bourjaily,* 483 U.S. at 175–76, 107 S.Ct. at 2778–79. Because the evidence in this case established Rule 801(d)(2)(E) requirements,[11] it was proper for the district court to admit the co-conspirators' statements. *See United States v. Devine,* 934 F.2d 1325, 1347 (5th Cir.), *cert. denied sub nom. Barker v. United States,* —— U.S. ——, 112 S.Ct. 349, 116 L.Ed.2d 288 (1991), *petition for cert. filed* (Nov. 22, 1991) (Government established existence of a conspiracy and defendant's part in it, and therefore so admission of co-conspirator's statements under Rule 801(d)(2)(E) was proper); *Triplett,* 922 F.2d at 1181 (co-conspirator's statements properly admitted pursuant to Fed.R.Evid. 801(d)(2)(E)).

### C

Vasquez also questions his conviction under section 2 of Title 18 for aiding and abetting the substantive offense of possession of marijuana with intent to distribute the marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

 To convict someone of possession of contraband with intent to distribute in violation of section 841(a)(1), the Government must prove beyond a reasonable doubt (1) the defendant's possession of illegal substance, (2) knowledge, and (3) intent to distribute. *See United States v. Freeze,* 707 F.2d 132, 135 (5th Cir.1983). Possession may be actual or constructive. *Id.* Constructive possession is the knowing exercise of, or the knowing power or right to exercise dominion and control over the proscribed substance. *See United States v. Carrasco,* 830 F.2d 41, 45 (5th Cir.1987) (citations omitted). The Government's theory is that Vasquez aided and abetted others in possessing marijuana with intent to distribute. A conviction for aiding and abetting under 18 U.S.C. § 2(a) requires the Government to establish that Vasquez became associated with a criminal venture and participated in this venture. *See Unit-*

ed States v. Colwell, 764 F.2d 1070, 1072 (5th Cir.1985) (citation omitted). Association means that Vasquez shared in the criminal intent of the principal. *Id.* Participation means that Vasquez engaged in some affirmative conduct designed to aid the venture. *Id.* The defendant need not commit all elements of the substantive underlying offense as long as he aided and abetted each element. *See United States v. Fischel,* 686 F.2d 1082, 1087–88 (5th Cir. 1982), *habeas corpus proceeding,* 747 F.2d 271 (5th Cir.1984). Accordingly, a showing that Vasquez aided and abetted each element of the substantive offense subjects him to punishment under section 2 as a principal in the underlying offense. *Id.*

 Vasquez discusses the underlying substantive offense in his brief and then argues that he neither affirmatively acted to aid in the venture nor shared the criminal intent of the principals. The Government correctly notes, however, that Vasquez met with others to plan the marijuana transaction, that he discussed the proposed sale with Gomez, and that he displayed a bundle of marijuana to the prospective purchaser[12]—this evidence is "sufficient for a reasonable factfinder to conclude" that Vasquez shared the criminal intent of the principals. *See United States v. Graham,* 858 F.2d 986, 991 (5th Cir.1988), *cert. denied,* 489 U.S. 1020, 109 S.Ct. 1140, 103 L.Ed.2d 201 (1989). Furthermore, the same evidence that supports Vasquez's conspiracy conviction also supports the jury's finding that Vasquez aided and abetted the possession of marijuana with intent to distribute, as charged in the indictment. *See United States v. Magee,* 821 F.2d 234, 239 (5th Cir.1987) (citation omitted). Accordingly, we find that there is sufficient evidence that Vasquez aligned himself with the venture and aided in its completion.

### IV

We, therefore, AFFIRM.

---

11. *See supra* Part III.A.

12. *See supra* Part III.A.