**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 91-8477**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**ANDREW MENDOZA-BURCIAGA, JUAN ALBERTO-GONZALEZ,
VINCENTE SALINAS-RODRIGUEZ, and ARTURO CAMPOS-ZAMORA,**

**Defendants-Appellants.**

_____

Appeal from the United States District Court
for the Western District of Texas
_____

(December 29, 1992)

Before DAVIS, JONES, Circuit Judges and PARKER,[1] District Judge.

EDITH H. JONES, Circuit Judge:

Appellants Mendoza-Burciaga, Alberto-Gonzalez and Salinas-Rodriquez and Campos-Zamora were all convicted of (1) conspiracy to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and (2) possession with intent to distribute more than five kilograms of cocaine in violation of § 841(a)(1). Mendoza-Burciaga and Alberto-Gonzalez were additionally convicted of unlawfully carrying firearms during and in relation to a federal drug

_____

[1]   Chief Judge of the Eastern District of Texas, sitting by designation.

trafficking felony in violation of 18 U.S.C. § 924(c). The defendants were assessed sentences ranging from 262 to 420 months imprisonment.

Among a variety of challenges to their conviction, appellants raise two thought-provoking arguments. First, they contend that the DEA agents' warrantless search of a residence did not fall within the "protective sweep" exception to the Fourth Amendment's warrant requirement. Additionally, they complain that the district court incorrectly excluded the defendants and their counsel from the in camera hearing to take testimony of confidential informants. While both of these arguments raise constitutional issues, we have decided that the district court did not err in rejecting appellants' assertions. We find no merit in the appellants' other arguments concerning the sufficiency of evidence, juror challenges, jury instructions and sentencing guidelines. We therefore affirm the convictions.

## BACKGROUND

In December 1990, members of a combined state and federal drug task force received information from confidential informants that a trailer at 25 Gaila Lane in Del Rio, Texas had received a large shipment of narcotics and that the trailer was to be used as the distribution point. The task force began surveillance of the trailer.

On December 18, an empty truck arrived at the trailer and pulled into a covered garage. Forty-five minutes later it left with boxes in its bed. Air and ground surveillance followed the

2

truck en route to Normandy, Texas. Mendoza-Burciaga drove the truck and Alberto-Gonzalez was the passenger. The truck arrived at the home of Salinas-Rodriguez near Normandy, and backed up on the driveway next to the house.

The agents observed four people entering and exiting the house from the back of the truck, but from their vantage point, the agents could not see whether the people were carrying anything. At this point undercover agent Bowles drove by the house in an unmarked car. Agent Bowles testified that Alberto-Gonzalez, a convicted felon, recognized him. The four people then began acting nervously. Alberto-Gonzalez and Mendoza-Burciaga left the house in the truck.

The agents stopped the truck based on their belief, fortified by the truck's evasive maneuvers, that the suspects were aware of the presence of law enforcement personnel and were attempting to flee. A rifle was visible in the cab of the truck. Alberto-Gonzalez and Mendoza-Burciaga were arrested. A search of the truck turned up two more firearms in a bag. The agents notified the other members of the task force still watching the home that they found weapons in the truck.

Agents swiftly converged on the Normandy home. Campos-Zamora was captured while attempting to flee. Salinas-Rodriguez was also apprehended. The agents next conducted a "protective sweep" of the house to determine whether there were any weapons or persons there, to prevent the destruction of evidence, and to secure the premises. Inside, they saw, in plain view, 300 kilogram

3

size packages, which were later determined to contain cocaine. State officers assigned to the task force then obtained a search warrant for the residence from a justice of the peace in Eagle Pass. That search produced documents belonging to Campos-Zamora. Upon another warranted search of the Del Rio trailer, 239 kilograms of cocaine were found.

## DISCUSSION

### Confrontation of the Informants

Permeating the entire appeal is the appellants' inability to confront for cross-examination the confidential informants who provided the information that laid the groundwork for probable cause in the original warrants.

The Supreme Court has permitted the government to avoid, under certain circumstances, disclosure of confidential informants' identity since its decision in Roviaro v. United States, 353 U.S. 53, 71, 77 S. Ct. 623, 628, 1 L.Ed.2d 639 (1957). In applying Roviaro, this court has developed a three-part balancing test, under which the trial court must consider (1) the level of the informant's involvement in the alleged criminal activity, (2) the helpfulness of disclosure to the asserted defense and (3) the government's interest in non-disclosure. United States v. Singh, 922 F.2d 1169, 1172 (5th Cir. 1991); United States v. Diaz, 655 F.2d 580, 586 (5th Cir. 1981), cert. denied, 455 U.S. 910, 102 S. Ct. 1257, 71 L.Ed.2d 488 (1982); United States v. Vizcarra-Porras, 889 F.2d 1435, 1438 (5th Cir. 1989), cert. denied, 495 U.S. 940, 110 S. Ct. 2192, 109 L.2d 520 (1990). This court applies the

4

clearly erroneous standard to findings of fact and the abuse of discretion standard to the conclusions reached by the trial court. Vizcarra-Porras, 889 F.2d at 1438.

In an in camera hearing, the district court reviewed the evidence of the government and determined that protecting the identity of the confidential informant was proper in light of Roviaro. The evidence and findings are in a sealed record, which this court has carefully reviewed. To permit the defendants' inquiries to be answered, the court tape-recorded questions posed by their counsel before the in camera hearing and then had the government agents furnish their answers during the in camera hearing. The court itself questioned government counsel and the agents vigorously. The informant tip was found to have related only to the presence of cocaine in the Gaila Lane Trailer. Consequently, the informant's information had nothing to do with what the government learned from and after it initiated air and ground surveillance, nor did it involve the events at the Normandy residence. Under factual situations analogous to this, other circuits upheld the exclusion of both the defendant and his attorney. U.S. v. Johns, 948 F.2d 599, 606 (9th Cir. 1991) (citation omitted). We are therefore satisfied that Judge Garza neither made clearly erroneous findings of fact nor abused his discretion in reaching his conclusions.

Although this court has suggested allowing counsel for the defendant at in-camera hearings along with the issuance of a gag order as a second best way to ensure the defendants

5

confrontation rights, <u>Singh</u>, 922 F.2d at 1172, the use of this procedure is still within the judge's discretion subject to the same standard of arbitrariness. In this case, although Judge Garza banned the defendants' attorneys from the hearing, we find that the judge did an adequate job of protecting the rights of the defendants as regards possible defenses. <u>See</u> <u>Johns</u>, 948 F.2d at 606 (discussing this procedure). This being so, we uphold the nondisclosure of the identity of the informants.

**Suppression of the Evidence.**

<u>Search of the Truck</u>.

Only Mendoza-Burciaga, the driver, has standing to challenge the search. Alberto-Gonzalez, the passenger in the truck, has no standing to challenge the search. <u>United States v. Harrison</u>, 918 F.2d 469, 472 (5th Cir. 1990) (citations omitted).

The agents were justified in stopping Mendoza-Burciaga's truck because they were operating under exigent circumstances. They had reason to fear that Mendoza-Burciaga and Alberto-Gonzalez were fleeing. <u>United States v. Johnson</u> 862 F.2d 1135, 1138 (5th Cir. 1988). They had information from a reliable informant that two men had picked up and delivered narcotics. Their surveillance of the suspects corroborated the tip. The officers knew that Alberto-Gonzalez had been previously convicted of possession of eighteen tons of marijuana. They had observed the truck make a u-turn as if to determine whether it was being followed. Further, the officers were correct in searching and seizing the other weapons in the truck. Officers may legally search for weapons if

6

they believe that the safety of themselves or others is in danger. Michigan v. Long, 463 U.S. 1032, 1049, 103 S. Ct. 3469, 3480, 77 L.Ed. 1201 (1983).

**Search of the Normandy House.**

Only Salinas-Rodriguez has standing to challenge the search of his house in Normandy. Campos-Zamora is incorrect in the assertion that he also has standing to challenge the search. Fourth Amendment rights are personal and may not be vicariously asserted. Alderman v. United State, 394 U.S. 165, 174, 89 S. Ct. 961, 966-67, 22 L.Ed. 176 (1969). Campos-Zamora neither owned the Normandy home nor claims that he had a reasonable expectation of privacy there. Campos-Zamora had no possessory interest in the Normandy house which he neither owned nor occupied, and no expectation of privacy is created simply by presence. United States v. Whitley, 670 F.2d 617, 619 (5th Cir. 1982).

As to the constitutionality of the actual search, the Supreme Court recently addressed the standards for warrantless searches in exigent circumstances in Maryland v. Buie, 494 U.S. 325, 110 S. Ct. 1093, 108 L.Ed.2d 276 (1990). In Buie the court held

> that as an incident to the arrest officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in any closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rationale inferences from these facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the

7

arrest scene.  <u>Buie</u>, 325 U.S. at 334, 110 S.
Ct. at 1098.

The standard of review for the findings of these facts is clearly erroneous.  <u>United States v. Vasquez</u>, 953 F.2d 176, 179 (5th Cir. 1992).

The circumstances that justify warrantless searches include those in which officers reasonably fear for their safety, where firearms are present, or where there is risk of a criminal suspect's escaping or fear of destruction of evidence.  <u>Johnson</u>, 862 F.2d at 1138 (5th Cir. 1988); <u>United States v. Caraza</u>, 843 F.2d 432, 435 (11th Cir. 1988); <u>United States v. Gardner</u>, 553 F.2d 946, 948 (5th Cir. 1977); <u>United States v. Kolodziej</u>, 706 F.2d 590, 596 (5th Cir. 1983).  The fact that the warrantless search occurred immediately after the arrest of the suspects supports the finding of exigent circumstances.  <u>Caraza</u>, 843 F.2d at 435.

The district court found that the officers did not know whether other suspects were in the house.  They did know that the suspects driving the truck were armed.  If others were in the house and armed, the officers would be in great danger.  They also reasonably believed that the suspects were aware of the surveillance and were attempting to flee.  Campos-Zamora attempted to run when one of the officers approached him.  That the suspects were aware of the officers' presence also supports a finding that the task force agents reasonably feared evidence might be destroyed inside the house.  Finally, the officers took only minimally necessary steps to secure the house:  they made an immediate and quick visual search and looked no further until they obtained a

8

warrant. Under these facts, the district court was not clearly erroneous in finding exigent circumstances.

Where officers are lawfully present in a house during a security sweep they may seize evidence in plain view, Coolidge v. New Hampshire, 403 U.S. 443, 467-68, 91 S. Ct. 2022, 2039, 29 L.Ed.2d 564 (1971); Caraza, 843 F.2d at 435. There has been no claim that the 300 kilos of cocaine, stacked high in a room whose doors were open, was not in plain view. The officers were justified in seizing the evidence without a warrant.

Because the security sweep was justified by the exigent circumstances under Buie, and the warrantless seizure of the cocaine was legal, we need not address the further contentions of Salinas-Rodriguez that the subsequent search warrant was defective and the task force agency did not rely on it in good faith.

**Sufficiency of the Evidence**

Campos-Zamora challenges the sufficiency of the evidence upon which his convictions of conspiracy to possess and possession of cocaine were based. In reviewing the sufficiency of evidence to support a conviction this court asks whether a rational trier of fact could find that the evidence established guilt beyond a reasonable doubt. United States v. Carrasco, 830 F.2d 41, 43 (5th Cir. 1987).

The testimony at trial supports the conviction on conspiracy and possession counts. Campos-Zamora was present on the scene where several million dollars in cocaine was stacked in plain view. The evidence supported an inference that the cocaine was

9

brought there in the truck. The evidence supported the further inference that Campos-Zamora was among the four men who helped unload the cocaine from the truck when it arrived at the Normandy house. There was evidence that Campos-Zamora had personal documents in the house, which supported the inference that once inside the house he could hardly avoid seeing cocaine. Campos-Zamora's attempt to escape was also a legitimate ground to infer guilt. United States v. Alonzo, 571 F.2d 1384, 1386 (5th Cir. 1978). This evidence was sufficient to convict Campos-Zamora of the offenses charged.

**Denial of Juror Challenge**

On voir dire, one of the potential jurors identified herself as an employee at the detention center where the defendants were held. Under questioning by the district court, the woman indicated she knew nothing about the trial, could be fair, and could take instructions. Mendoza-Burciaga's challenge for cause was denied. Mendoza-Burciaga subsequently used a peremptory strike to remove the woman, and he appeals the denial of his challenge for cause.

Mendoza-Burciaga makes no claim that he was prejudiced by having to use the peremptory challenge to strike the detention center employee rather than someone else. The judge's determination as to actual bias by jurors is reviewed for manifest abuse of discretion. Irvin v. Dowd, 366 U.S. 717, 723-24, 81 S. Ct. 1639, 1643, 6 L.Ed.2d 751 (1961); United States v. Costner, 646 F.2d 234, 236 (5th Cir. 1981); United States v. Horton, 646 F.2d

10

181, 186 (5th Cir. 1981). Here, where the judge took pains to screen the witness, there was no such abuse. Moreover, there was no harm to the defendants as the woman never served.

### Additional Peremptory Challenges

The district court granted the defense two additional peremptory challenges and also granted the prosecution two additional peremptory challenges. Mendoza-Burciaga complains that the court did not follow Federal Rule of Criminal Procedure 24(b) and that the court's action upset the ratio of defense to prosecution preemptory challenges. Mendoza-Burciaga points to no case authority establishing that this was an error, much less reversible error. Rule 24(b) does not mandate a ratio of peremptory challenges. Indeed, Mendoza-Burciaga makes no claim that he was prejudiced by the ruling or that the jury was unrepresentative of the community or biased in any way.

### Error in Jury Instructions

The trial court instructed the jury that it could find Mendoza-Burciaga guilty of carrying a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c), if it found:

> 1. That [he] was a member of the conspiracy alleged in Count 1 of the indictment; and
>
> 2. That the other conspirators committed the offenses in Counts 2 and 3 [weapons violation] in furtherance of or as a foreseeable consequence of that conspiracy.

Mendoza argues that this instruction would permit him to be convicted of the weapons offense based on a co-conspirator's mere

11

possession of cocaine. The argument is groundless. The instructions explicitly permits the jury to convict only if another co-conspirator both possessed cocaine and was guilty of the weapons offense.

Further, the instruction is firmly rooted in the Pinkerton doctrine, Pinkerton v. United States, 328 U.S. 640, 66 S. Ct. 1180, 90 L.Ed. 1489 (1946). This court held in United States v. Raborn, 872 F.2d 589, 596 (5th Cir. 1989), that Pinkerton permitted a defendant to be convicted under section 924(c) based on a co-conspirator's possession of a weapon during a drug trafficking crime even if the defendant was unaware of the conspiratory possession. Thus, Mendoza-Burciaga was liable for acts of his co-defendants.

**Calculation of Mendoza-Burciaga's Sentence**

The Sentencing Guidelines provide that a sentencing court must consider a defendant's involvement with quantities of narcotics not charged in the indictment when such conduct was "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1(b)(1).3(a)(2). A district court must make findings that the relevant conduct included narcotics not charged in the indictment. United States v. Register, 931 F.2d 308, 313 (5th Cir. 1991). In this case, the trial court considered the 239 kilos found in the Del Rio trailer in setting Mendoza-Burciaga's base offense level. Mendoza-Burciaga asserts that the trial court failed to make the requisite factual finding to support that inclusion, namely, that the 239 kilos left

12

behind in the trailer were part of the same course of conduct as the 300 kilos Mendoza-Burciaga picked up and then delivered to the Normandy address.

Judge Garza indicated at a sentencing hearing that "because the 300 [kilograms of cocaine taken from the Del Rio trailer by Mendoza-Burciaga] was part of the 529 [kilograms of cocaine originally in the Del Rio trailer] that that is sufficient under 1(b)1.3. . ." On review of the sentencing transcript, it appears that the trial court implicitly found that the evidence was sufficient to satisfy the "same course of conduct requirement" because all of the drugs were originally stored at the Gaila Lane address. Mendoza-Burciaga simply misread the record to assert otherwise.

For the foregoing reasons, the judgments of conviction are **AFFIRMED**.