**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gilbert Ortiz SANTA MARIA,
Defendant–Appellant.**

No. 93–10048.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 16, 1993.

Decided Feb. 2, 1994.

Frank R. Zapata, Assistant Federal Public Defender, Tucson, AZ, for the defendant-appellant.

David Shapiro, Assistant United States Attorney, and Robert L. Miskell, Assistant United States Attorney, Tucson, AZ, for the plaintiff-appellee.

Before: SKOPIL, THOMPSON, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Border Patrol agents, looking for aliens and drugs along a trail well traveled with both, came upon Gilbert Santa Maria's property and, without consent, searched a trailer near his mobile home for drugs. They discovered burlap bags of marijuana. The district court found that the trailer was outside the curtilage; held that the search was authorized under 8 U.S.C. § 1357(a)(3), which permits access to private lands within twenty-five miles of the border to prevent the illegal entry of aliens into the United States; and denied Santa Maria's motion to suppress. Following his conviction for conspiracy to possess marijuana and possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(a) and (b), and conspiracy to import marijuana and importation of marijuana, in violation of 21 U.S.C. §§ 963, 960(b), and 952(a), Santa Maria appeals.[1]

We must decide whether § 1357(a)(3) authorizes the Border Patrol to search a structure such as Santa Maria's trailer for drugs. We hold that while the agents had authority to enter Santa Maria's lands to search for *aliens*, § 1357(a)(3) confers no authority to search the trailer for *drugs*. In the absence of a warrant, consent, or exigent circumstances, their search runs afoul of the Fourth Amendment. Therefore, marijuana from the trailer should have been suppressed. Because the agents had probable cause to search Santa Maria's mobile home only as a result of the marijuana in the trailer, the

burlap bags (similar to those in the trailer) and rope seized in the mobile home should likewise have been suppressed. We have jurisdiction, 28 U.S.C. § 1291, and we reverse.

**I**

On June 10, 1992, Border Patrol agents, inspecting a known narcotics smuggling trail about ten miles north of the border between Arizona and Mexico, found approximately eight fresh sets of tracks leading north. The agents examined the trail on which the tracks were found because they had recently made two marijuana seizures from that trail. They followed the tracks north for several miles and arrived at Gilbert Santa Maria's property.

The property is surrounded by widely-strung barbed wire. From the road, the agents could see a mobile home and a trailer near it. The agents then went onto Santa Maria's property without a warrant and followed the tracks to his RV trailer. At least some of the agents climbed over or under the wire. Other agents entered through a gate. From outside the trailer, they could neither see nor smell anything unusual.

Upon arriving at the trailer, Agent John France met and spoke with Gilbert Santa Maria. Shortly thereafter, Victor Santa Maria, Gilbert's brother, joined them. France asked Victor his citizenship. Angel Lopez–Molina and another defendant who was acquitted at trial were standing nearby.

France told Gilbert Santa Maria that he suspected there was marijuana in the trailer and either asked for his consent or told him to open the trailer "for the purpose of searching for those narcotics."

Santa Maria went to the mobile home, got the key, and opened the trailer. The district court found that the government failed to meet its burden of proving that Santa Maria freely and voluntarily consented to the search. Once the door was opened, France smelled marijuana and saw burlap sugar

---

1. Victor Santa Maria and Angel Lopez–Molina also appeal the denial of their motion to suppress, and Lopez–Molina appeals his conviction. We address these appeals in a separate memorandum disposition.

sacks. There were 357 pounds of marijuana in the sacks. The sacks were not visible from the small window in the back of the trailer because they were underneath some carpet.

After arresting all four men, the agents made a sweep of the mobile home. In it, they found burlap bags similar to those containing marijuana in the trailer and rope used for carrying bundles of marijuana.

## II

We review the denial of a motion to suppress de novo. *United States v. Garcia,* 997 F.2d 1273, 1279 (9th Cir.1993). The trial court's factual findings are reviewed for clear error. *Id.*

## III

The district court found that the border patrol agents were lawfully on Santa Maria's property pursuant to 8 U.S.C. § 1357(a)(3) and held that the agents were within their statutory authority when they entered the trailer. Section 1357(a)(3) provides:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant ... within a reasonable distance from any external boundary of the United States, to board and search for aliens any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or vehicle, and within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwellings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States.

8 U.S.C. § 1357(a)(3).

Santa Maria argues that, based on the plain meaning of § 1357(a)(3), agents are only authorized to have access to private lands to patrol the border to prevent the illegal entry of aliens. He contends that the agents here did not come onto Santa Maria's property to prevent illegal immigration; instead they came to search for narcotics. In addition, he urges that the statute does not authorize agents to search buildings that are not "dwellings."

The government argues that the agents were authorized to enter the property and search the trailer because the trailer was not a "dwelling." It also argues that since the agents were trying to prevent the illegal entry of aliens as well as to look for drugs, the search for drugs was within the statute.

The parties do not disagree that so long as no constitutional violation occurs, section 1357(a)(3) permits Border Patrol agents to enter private lands such as Santa Maria's. The dispute centers on whether, once there, the agents could look for anything other than aliens.

### A

Section 1357(a)(3) only authorizes the Border Patrol to "have access to private lands, but not dwellings, *for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States.*" 8 U.S.C. § 1357(a)(3) (emphasis added). Border Patrol authority was extended to private lands within 25 miles of the border because "the activities of the border patrol [had] in certain areas been seriously impaired by the refusal of some property owners along the border to allow patrol officers access to extensive border areas in order to prevent such illegal entries." H.R.Rep. No. 1377, 82 Cong., 2d Sess. (1952), *reprinted in* 1952 U.S.C.C.A.N. 1358, 1360. Nothing in the statute or its history authorizes a search for drugs.

The district court found that the agents in this case were searching for both aliens and drugs, and the government seeks to justify its search on the footing that 90% of the backpackers carrying marijuana in the area of Santa Maria's property are illegal aliens. However, illegal aliens and illegal drugs are two different things. A lawful search for one is not a lawful search for the other.

Although neither the Supreme Court nor our court has considered the reach of § 1357(a)(3) beyond automobile searches at the border or its functional equivalent, it is clear that we must construe statutes to be constitutional, if possible, and that "no Act of

Congress can authorize a violation of the Constitution." *Almeida–Sanchez v. United States,* 413 U.S. 266, 272, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973). In *Almeida–Sanchez,* the Court held that a roving patrol stop more than 20 miles from the border and a warrantless vehicle search, without probable cause, that turned up marijuana were not justified under § 1357(a)(3) and violated the Fourth Amendment right to be free of unreasonable searches and seizures. Even though the dissent would have upheld the search for aliens and discovery of marijuana under § 1357(a)(3), Justice White acknowledged that:

> Section 1357(a)(3) authorizes only searches for aliens and only searches of conveyances and other property. No searches of the person or for contraband are authorized by the section. The authority extended by the statute is limited to that reasonably necessary for the officer to assure himself that the vehicle or other conveyance is not carrying an alien who is illegally within this country; and more extensive searches of automobiles without probable cause are not permitted by the section.

*Id.* at 294, 93 S.Ct. at 2550. (White, J., dissenting).

In *United States v. Martinez–Fuerte,* 428 U.S. 543, 562, 96 S.Ct. 3074, 3085, 49 L.Ed.2d 1116 (1976), the Court approved stops at permanent border checkpoints in the absence of articulable individualized reasons for suspicion to ask about citizenship and immigration status. However, "[n]either the vehicle nor its occupants are searched, and visual inspection of the vehicle is limited to what can be seen without a search." *Id.* at 558, 96 S.Ct. at 3083. Any further search requires consent or probable cause. *Id.* at 567, 96 S.Ct. at 3087.

We recently revisited the issue of permanent border checkpoint stops in *United States v. Soyland,* 3 F.3d 1312 (9th Cir.1993). There, Border Patrol agents asked for permission to search the car and when the hatchback door was opened, smelled methamphetamine. In holding there was no impropriety in the search, we noted that the parties did not argue and there was no evidence that the Border Patrol intended to search for illegal drugs. *Id.* at 1314.

■ In each of these cases, drugs were discovered only incidentally to a lawfully conducted stop or search for aliens. Here, the Border Patrol agents had a dual purpose for entering Santa Maria's property, but intended only to search for illegal drugs in the trailer. Section 1357(a)(3) does not authorize searches for drugs. As there is nothing in the record to indicate that the agents were looking for anything other than drugs in Santa Maria's trailer, there is no statutory basis for the search.

**B**

■ The government argues that even though the search was not authorized by section 1357(a)(3), it was valid under the Constitution because the trailer was neither a dwelling nor within the curtilage of a dwelling and therefore must be "open fields" to which no Fourth Amendment protection attaches. *Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); *see also United States v. Dunn,* 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).

■ This argument fails. The Fourth Amendment protects structures other than dwellings. "[O]ne may have a legally sufficient interest in a place other than her own house so as to extend Fourth Amendment protection from unreasonable searches and seizures in that place." *United States v. Broadhurst,* 805 F.2d 849, 851 (9th Cir.1986). "[A] structure need not be within the curtilage in order to have Fourth Amendment protection." *Id.* at 854 n. 7; *see also Dow Chemical Co. v. United States,* 476 U.S. 227, 236, 106 S.Ct. 1819, 1825, 90 L.Ed.2d 226 (1986) (reasonable expectation of privacy in interior of covered buildings); *United States v. Wright,* 991 F.2d 1182 (4th Cir.1993) (barn); *United States v. Johns,* 851 F.2d 1131, 1135–36 (9th Cir.1988) (per curiam) (storage locker), *cert. denied,* —— U.S. ——, 112 S.Ct. 3046, 120 L.Ed.2d 913 (1992); *United States v. Trickey,* 711 F.2d 56 (6th Cir.1983) (outbuilding outside curtilage located on residential property with boarded up windows); *United States v. Hoffman,* 677

F.Supp. 589, 596 (E.D.Wis.1988) ("[A] person can have a protected expectation of privacy in buildings (*i.e.*, barns, garages, boathouses, stables, etc.) that are located far outside the area of the curtilage of the home.").

The government submits that Santa Maria's trailer is analogous to a stand of trees, *United States v. Pruitt*, 464 F.2d 494 (9th Cir.1972), or a covered man-made ditch, *Care v. United States*, 231 F.2d 22 (10th Cir.), *cert. denied*, 351 U.S. 932, 76 S.Ct. 788, 100 L.Ed. 1461 (1956), to which Fourth Amendment protection does not extend. We disagree. It was a locked unit which housed tools, a chainsaw, and an aquarium in addition to burlap sacks of marijuana. The government does not directly argue that Santa Maria had no expectation of privacy in the trailer,[2] and we have no trouble concluding that the trailer is not an "open field."

Nor was the search consensual. While the government argues that Santa Maria did consent, the district court found to the contrary and there is no cross-appeal from that ruling.

Since the search of the trailer was unauthorized by § 1357(a)(3) and the agents lacked consent, the search violated the Fourth Amendment. Therefore the marijuana seized is inadmissible.

### IV

 The agents had probable cause to search the mobile home only because of the marijuana found as a result of the illegal search of the trailer. Because the original search of the trailer was illegal, all the evidence subsequently derived from that search, including the evidence found as a result of the search of the mobile home, is inadmissible as "fruit of the poisonous tree." *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939); *see also Segura v. United States*, 468 U.S. 796, 804, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984). Accordingly, the burlap bags and rope found in the mobile home are also inadmissible.

**2.** Albeit outside the curtilage, the trailer was near the house, it was locked, Santa Maria had the

### V

We conclude that § 1357(a)(3) does not authorize the Border Patrol to search only for drugs. The Border Patrol is empowered by § 1357(a)(3) to conduct administrative searches for aliens. To expand this power to include searches for narcotics is impermissible. Absent probable cause or consent, this search was both unauthorized and a violation of the Fourth Amendment. Therefore Gilbert Santa Maria's convictions must be reversed.

**REVERSED.**

key, and his possessions were in it.