UNITED STATES of America
v.
**Juan Chavez OCHOA.**
**Crim. No. L–94–190.**

United States District Court,
S.D. Texas,
Laredo Division.

Jan. 6, 1995.

Marissa Perez Garcia, Office of the Federal Public Defender, Laredo, TX, for defendant.

Mary Lou Castillo, Asst. U.S. Atty., Laredo, TX, for the U.S.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending is this Defendant's motion to suppress evidence, which was heard on November 4, 1994. Both sides thereafter filed briefs in support of their respective positions. The factual background recited in the Government's brief of November 18, 1994 is generally accurate, and the Court adopts it for purposes of this memorandum.

Marihuana was found in two locations. The majority was found in a parked truck and a smaller amount in a residence occupied by the Defendant. Both the truck and the residence were located on a fenced lot located on a bluff overlooking the Rio Grande River, which separates the Republic of Mexico from the United States.

The Government contends that its Border Patrol agents could enter the lot by virtue of 8 U.S.C. § 1357(a)(3), allowing them to have access, without warrant, "to private lands ... for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States." While there is limited case law interpreting the statute, its explicit language appears to sustain the agents' authority to enter the lot to search for aliens. *See United States v. Santa Maria*, 15 F.3d 879, 880 (9th Cir.1994). Defendant apparently does not challenge this proposition. Indeed he urges the Court to rule that the statute does not authorize entry onto private lands "for any purpose other than to search for aliens." Defendant's Brief of December 5, 1994, page 5. The Court agrees that this is the meaning of the statute. The Defendant further asserts, however, that under the facts of this record "it is clear that the agents' *main* purpose for entering onto Defendant's property was to search for drugs." Defendant's Brief, page 4. The Court disagrees. On the contrary, it is clear that the agents were tracking footprints of persons coming out of the river. Whether those persons might also be carrying drugs, guns, false documents, counterfeit money, or any other contraband is beside the point.

Unlike *Santa Maria*, this was not a case where the agents were inspecting "a known narcotics smuggling trail about ten miles north of the border" where they had "recently made two marihuana seizures." 15 F.3d at 880. This is also not a case where the agents demanded permission to search a trailer "for the purpose of searching for those narcotics." *Id.* Instead the agents were in hot pursuit of fresh tracks of several persons coming away from the international river just yards away. As they entered the lot in question, they inadvertently came upon the strong odor of marihuana emanating from a parked truck. Looking through the truck window they could see in plain view large burlap sacks of the type usually associ-

ated with marihuana. Because they were lawfully on the premises and because the marihuana was in plain view, the agents had the right to search the vehicle. Moreover, the Defendant specifically stipulated that he had no privacy interest in the truck or its contents and that he was questioning only the agents' right to be inside the lot.

The search of the residence is a closer question. The Court agrees with Defendant that the doctrine of "inevitable discovery" does not assist the Government because there is no indication that the agents were "actively pursuing a substantial alternate line of investigation" at the time of the "warrantless entry of the residence." *United States v. Wilson*, 36 F.3d 1298, 1304 (5th Cir.1994); *United States v. Lamas*, 930 F.2d 1099, 1102 (5th Cir.1991). Moreover, the Court is dubious of the assertion that the agents entered the house in "hot pursuit" of the aliens.

The Government, however, also invokes the doctrine of "exigent circumstances." The agents were on the property following the trail of six to eight persons, whose footprints indicated that they had come from the international river and onto the property over a cinder block fence. The agents then encountered a large amount of marihuana in the parked truck and thereafter, according to undisputed evidence, heard what they thought was a weapon being "racked" or "chambered" inside the residence. The Defendant eventually came out of the residence and spoke to the agents but refused a consent to search. They then heard the sound of a person exiting the house through a window and saw him running towards the river. Approaching that open window, the agents could see another person inside the house with what appeared to be marihuana bundles on the floor. It was late night and dark.

Whether exigent circumstances exist is based on a number of factors, including the degree of urgency involved, the amount of time necessary to obtain a warrant, the possibility of danger to officers remaining to guard the site, and a reasonable belief that contraband could be removed or destroyed. *United States v. Carrillo–Morales*, 27 F.3d 1054, 1063 (5th Cir.1994); *United States v.*

*Mendoza–Burciaga*, 981 F.2d 192, 196 (5th Cir.1992). The possible presence of weapons and the fact that other suspects are unaccounted for is also pertinent. *United States v. Henry*, 878 F.2d 937, 941 (6th Cir.1989).

In the instant case, the officers thought they were dealing with perhaps as many as eight persons. One had already fled. They thought they heard evidence of a weapon inside the house. They now knew that marihuana was located on the premises, and it is not uncommon to conclude that weapons accompany drugs. Under the authorities cited above, the Court concludes that the officers acted reasonably in entering the house to determine the presence of other persons, weapons, and secure the contraband. Once they did so, the marihuana was visible in plain view and could be seized. *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

Defendant does not seriously challenge the foregoing analysis. Instead he poses the issue as being "whether there were exigent circumstances to support the *initial entry* of Border Patrol agents onto the fenced, private property surrounding Defendant's home in the first place." Defendant's Brief, page 6 (emphasis added). The Court has already concluded, however, that the initial entry was justified not by exigent circumstances but by the provisions of 8 U.S.C. § 1357(a)(3). It was after the agents lawfully entered the property that the exigent circumstances arose.

For all the foregoing reasons, the motion to suppress is DENIED.